CASE 71—PETITION ORDINARY—JUNE 12.

# Louisville & Nashville Railroad Company v. Hartwell.

APPEAL FROM HARDIN CIRCUIT COURT.

1. COMMON CARRIER—DELIVERY TO CONSIGNEE—PRESUMPTION OF OWNERSHIP.—When, after goods have been received by a carrier for transportation, and before their delivery to the consignee, the shipper gives it notice that they are not to be delivered to the

Louisville & Nashville Railroad Company v. Hartwell.

consignee unless the bill of lading is presented by him and a draft for the price of the goods paid, and the goods are delivered to the consignee in violation of this order, the carrier is liable for the value of the goods; and after such notice the presumption no longer obtains that the consignee is the owner of the goods.

2. MEASURE OF DAMAGES.—The damages for such wrongful delivery in violation of the shipper's order, can not exceed the value of the goods.

3. GENERAL VERDICT—COURT NOT AUTHORIZED TO FIX AMOUNT OF RECOVERY—PRACTICE.—Where in a general verdict the jury merely finds for the plaintiff, without fixing any amount, and the recovery if anything must be money, the court is not authorized to fix the amount of the verdict and render judgment therefor.  (Civil Code, Sec. 329.)

H. W. BRUCE, W. H. MARRIOTT AND WALKER D. HINES FOR AP-

PELLANT.

No brief in the record.

R. S. STITH AND S. H. BUSH FOR APPELLEE.

No brief in the record.

WALKER D. HINES IN PETITION FOR MODIFICATION AND EXTENSION

OF THE OPINION.

1. Upon delivery of goods to the carrier, the title either vests in the consignee or it does not; and if it does so vest, no subsequent notice by the consignor can change that fact.  The only office of such notice would be to put the carrier on notice and require it at its peril to satisfy itself whether the title *did* vest in the consignee upon delivery to it.

2. As this case must be tried again, we ask the court to extend its opinion and decide whether or not the peremptory instruction should not have been given because there was a lack of evidence to show that Hartwell was the owner of the goods; whether the instructions were proper if the case was properly submitted to the jury, and whether the verdict was without evidence to support it.

3. The assignee of a bill of lading, even though a *bona fide* purchaser for value, gets no better title than his assignor had; and if

Hartwell had no title to the apples on the 10th of September, 1892, he could transfer none to the bank. (Hutchinson on Carriers, Sec. 129; Benjamin on Sales, p. 1102, Sec. 1286; Porter on Bills of Lading, Sec. 438.)

4. The legal presumption is that the title to goods vests in the consignee as soon as the goods are delivered to the carrier; but this presumption is not conclusive and may be rebutted. (Smith v. Lewis, 3 B. M., 229; Hutchinson on Carriers, Sec. 135.)

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

On the 9th of September, 1892, Hartwell delivered to the appellant for shipment to A. Pennington & Co., of St. Louis, Mo., one hundred and seventy barrels of apples, for which he received from it a bill of lading. On the day following, Hartwell made a draft in favor of the First National Bank of Elizabethtown, Ky., on the consignee, A. Pennington & Co., for three hundred dollars and at the same time time delivered to it the bill of lading. He then notified the appellant not to deliver the apples to the consignee unless he presented the bill of lading and paid the draft which he had drawn in favor of the bank. In violation of Hartwell's order the appellant delivered to A. Pennington & Co. the apples without requiring them to present the bill of lading and pay the draft. The bank gave Hartwell credit for the draft, but Pennington & Co., failing to pay it, this action was brought to recover the amount of it of the appellant.

The answer denied that Hartwell was the owner of the apples and alleged that they were owned by Pennington & Co.

The shipper of goods may, even after the delivery to the carrier and after the bill of lading has been signed and delivered, alter their destination and direct their delivery to another consignee, unless the bill of lading has been forwarded to the consignee, or some one for his use. However,

this would not be the case if a state of facts existed which made the delivery of the goods to the carrier a delivery to the consignee and the owner of them. (Hutchinson on Carriers, 2d ed., sec. 134.)

While the consignee in the bill of lading is presumptively the owner of the goods and must be treated by the carrier as the owner, unless he has notice to the contrary, when goods are shipped deliverable to the order of the con-signor, for and on account of the consignee, the carrier can not deliver them to such consignee, except upon the production of the bill of lading, properly rendered by the consignor.

When the goods are thus shipped and deliverable the carrier must take notice that the consignee intended to retain the control of the disposition of the goods. (Hutchinson on Carriers, sec. 130.)

So when the shipper gives notice after they have been received by the carrier for transportation and before they are delivered to the consignee, that he is not to deliver them to the consignee he must take notice that the consignor intends to retain control of their ultimate disposition. After such notice the presumption no longer obtains that the consignee is the owner of the goods.

Bills of lading are assignable. When properly rendered and delivered with the intention of passing the title to them, it is a constructive delivery of the goods. (Hutchinson on Carriers, sec. 129.)

In the same way they could be pledged to pay a debt and thus give the assignee control of the goods.

There was no proof as to the value of the apples. It was essential that such proof should have been made before there could be a verdict and judgment for the plaintiff. (Sub-section 126, Civil

Code.) Unless they had a value the appellant could not have been damaged, except nominally on account of the appellant's delivery of the apples to Pennington Co. It can not be said because the draft was for three hundred dollars, therefore the apples were of equal value, and that there is an implied obligation on the part of railroad company to pay that amount. The company can only be made to pay the bank such damages as it sustained, not exceeding in amount the value of the apples, but in no event more than three hundred dollars.

Section 329, Civil Code, provides that "if, by a general verdict either party be entitled to recover money of the adverse party, the jury, in their verdict, must assess the amount of recovery."

In this case the verdict must be general, and, if anything, the plaintiffs were entitled to recover money of the defendant.

The court failed to tell the jury that if they found for the plaintiff they should assess the amount of recovery, and the jury did not fix it.

The verdict is as follows: "We of the jury find for the plaintiff."

Although there had been proof as to damages the court was not authorized to render a judgment on the verdict, because the jury had failed to assess the amount of recovery.

The testimony of Grimes and Talbot in rebuttal should have been given in chief.

The judgment is reversed for further proceedings in conformity with this opinion.

The following response was delivered to the petition for a modification and extension of the opinion, *per curiam.*

The only question in this case, under the pleadings and

proof, is as to who owned the apples when they were deliv-
ered to the carrier.

There is no evidence tending to show that Hartwell had
any authority as the agent of Pennington & Co. to draw the
draft.     In fact, the theory of the bank is that Hartwell
bought the apples on his own account, and it furnished the
money to pay for them.

It follows that instruction No. 4 should not have been
given.