# OHIO FARMERS INSURANCE COMPANY *v.* GLAZE.

[No. 7,967. Filed May 8, 1913. Rehearing denied October 7, 1913. Transfer denied December 10, 1913.]

1. INSURANCE. — *Fire Insurance.* — *Proof of Loss.* — *Sufficiency.* — Where insured in a fire policy covering a mercantile stock furnished all the proof of loss that he was able to furnish, because of the loss of the original bills rendered for the goods, and supplied such loss in accordance with the requirements of the company to the extent of his ability by procuring statements from numerous merchants from whom he made purchases and furnishing the company copies of the same, and furnishing an invoice of the goods, which the company's adjuster accepted without requiring it to be verified, there was a substantial compliance with the provision of the policy that the insured must furnish a verified statement showing the cash value of each item of property destroyed and the amount of loss thereon, and the company was liable, notwithstanding a waiver agreement made subsequent to the loss and stipulating that any action taken by the company in investigating the amount of the loss could not operate as a waiver of any of the conditions of the policy. pp. 152, 154.

2. INSURANCE.—*Contracts.*—*Construction.*—Provisions in an insur-

ance policy designed for the sole benefit of the company, will be most strongly construed in favor of the insured.   p. 153.

3.   INSURANCE.—*Waiver of Conditions of Contract.—Authority of Agent.*—A stipulation in a fire policy that no agent has power to waive any condition unless by written endorsement thereon, refers only to conditions essential to the obligatory and binding effect of the contract between the parties in the first instance, and to its continuing force and obligation until loss occurs, and does not refer to stipulations as to the manner of making proof of loss, which an agent may waive without indorsement.   p. 153.

4.   INSURANCE.—*Stipulation as to Proof of Loss.—Waiver.*—An insurance company will be deemed to have waived the proof of loss required by the policy, where its agent, duly authorized to act with reference to the subject, accepts proofs different from those required by the policy, notwithstanding the policy prohibits any agent from waiving any of its conditions.   p. 153.

From Harrison Circuit Court; *William Ridley,* Judge.

Action by Andrew J. Glaze against the Ohio Farmers Insurance Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Major W. Funk, George K. Gwartney* and *Lee Elliott,* for appellant.

*William T. Zenor, George B. McIntyre* and *Austin B. Corbin,* for appellee.

SHEA, J.—This was an action by appellee against appellant to recover upon a fire insurance policy executed by the latter to him. The amended complaint was in two paragraphs. Appellant's demurrer to each paragraph was overruled. Answer was filed in general denial. The issues formed were tried by jury; finding and judgment in favor of appellee. Appellant's motion for peremptory instructions to find in its favor was overruled. The only errors argued and not waived by appellant, are the overruling of its motion for peremptory instructions, and the overruling of its motion for a new trial.

The reasons urged in support of the motion for a new trial are, that the verdict is not sustained by sufficient evidence, and is contrary to law. Appellant's counsel in their

brief expressly state that: ''Of the several errors assigned for the reversal of this case, they all revert back to the fact of the insufficiency of the evidence to sustain the verdict.'' The court will, therefore, consider this proposition first.

The evidence shows that the policy sued on was for the sum of $1,100; $600 on appellee's two-story frame metal-roof storeroom, and $500 on his stock of groceries, patent medicines, hardware and dry goods contained in the building; that it was executed by appellant's agent on December 21, 1908, and appellee paid the premium due, receiving from the agent a receipt for same. The fire occurred about midnight or one o'clock on the night of December 22-23. About December 20, 1908, appellee commenced to take an inventory of the stock of goods contained in his store, and had partially completed it on December 22. This consisted of counting some of the goods, weighing those that sold by weight and making a list of same, putting down the prices paid by appellee, which he took from the bills rendered at the time he purchased the goods. The fire was discovered by appellee's daughter, who occupied a room in his dwelling house which was a separate building situated about two feet from the storeroom. The storeroom was heated by a large cast iron stove placed in the center of the lower floor, and connected by pipes with a chimney. The pipes were in good condition, and the stove had been in use for about a year. The building was also in good condition and repair, and had been recently painted. All appellee was able to save was a telephone box and some books, the store and its contents being completely destroyed. Appellee notified appellant's agent, Gwartney, of the fire the next day. On January 5, 1909, appellant's adjusting agent Chalfant called and made an examination of the loss. He asked appellee if he had a list of the property lost, and appellee told him as well as he could about the condition of the property. The agent then asked if he had the bills, to which appellee replied that he had not, everything had

been destroyed but the books, and they were not in the books. Appellee told him of the invoice and offered to get it, but the adjusting agent said: "Never mind, we generally require parties under such circumstances to get duplicate bills from the merchants they buy from for the last year past." Appellee thereupon furnished him the names of the merchants with whom he had been trading and the adjuster made a note of them, saying he would see them himself. Appellee informed the adjuster that he had paid cash for the goods, and they never had any bills. The adjusting agent then requested appellee to sign a nonwaiver agreement, which appellee hesitated to do until informed that it would not interfere with his policy in any way; that the "meaning of it was it would give them and me unlimited time in making investigation as to the bills"; that appellee would hear from him in eight or ten days. Appellee's understanding was that the adjuster was to see the parties first, but failing to hear from him, appellee called on them himself, and got statements from all of them. These statements were introduced in evidence, and many of them were to the effect that the merchant was unable to furnish information as to the exact amount of the purchases, the goods having been paid for in cash, and no record kept except a cash book entry. Copies of the statements obtained were made and forwarded to appellant's agent Gwartney. About three weeks later a second adjusting agent came, and appellee was notified to come to Gwartney's office. The adjusting agent made some figures and calculations, and appellee gave him the measurements of the building which the agent estimated as being worth $1,200. When appellee showed him the invoice of goods, he asked to take it with him, but appellee retained the original and had two copies made, one of which he furnished the adjusting agent. Appellee asked the agent when he would hear from him, or if there was anything further, and he said: "No, not at present"; that appellee would "hear from the company in a short

time''. The adjusting agent took the copy of the invoice
with him, but did not ask appellee to swear to it. Appellee
heard nothing further from the company in regard to his
loss. He wrote the company direct at LeRoy, Ohio, several
times, asking for information as to what it intended to
do, but received no reply. This was about a month or
six weeks after he met the adjusting agent at Gwartney's
office. Appellee also wrote to Gwartney, and heard from
him to the effect that the company still insisted upon fuller
and more complete statements than those appellee had for-
warded. Appellee insists that he obtained from the mer-
chants with whom he traded all he could get in the way
of statements and duplicate bills. There never has been
any settlement of the loss or any part of it by the company.
The complaint which was filed on November 15, 1909, al-
leged that the claim was more than eight months past due.

Appellant insists that there has been a failure of com-
pliance with the following requirements of the policy:

''and, within sixty days after the fire, unless such time
is extended in writing by this company, (appellee) shall
render a statement to this company, signed and sworn
to  *  *  * stating the knowledge and belief of the
insured as to the time and origin of the fire; the interest
of the assured and of all others in the property; the
cash value of each item thereof and the amount of loss
thereon; all incumbrances thereon; all other insurance,
whether valid or not, covering any of said property;
and a copy of all the descriptions and schedules in all
policies; any changes in the title, use, occupation, loca-
tion, possession, or exposures of said property since the
issuing of this policy; by whom and for what purpose
any building herein described and the several parts
thereof were occupied at the time of fire; and shall
furnish, if required, verified plans and specifications of
any building fixtures, or machinery destroyed or dam-
aged, etc.''

The policy contained a nonwaiver clause. It is also
shown in evidence that in addition to this clause a non-
waiver agreement was signed on the day the adjuster Chal-
fant visited the scene of the fire as follows:

"It is hereby mutually stipulated and agreed by and between Andrew J. Glaze, party of the first part, and Ohio Farmers Insurance Company of LeRoy, Ohio, and other Companies signing this agreement, party of the second part, that any action taken by said party of the second part, in investigating the cause of fire or investigation and ascertaining the amount of loss and damage to the property of the party of the first part caused by fire alleged to have occurred on 23d day of December, 1908, shall not waive or invalidate any of the conditions of the policy of the party of the second part, held by the party of the first part and shall not waive or invalidate any rights whatever of either of the parties to this agreement.

The intent of this agreement is to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of the loss or damage, in order that the party of the first part may not be delayed unnecessarily in his business and in order that the amount of his claim may be ascertained and determined without regard to the liability of the party of the second part."

It is the opinion of this court that under the authorities of both this and the Supreme Court there was a substantial compliance with all the provisions of the policy imposed upon appellee. He furnished all the proof of loss that he was able to furnish, because of loss of the original bills rendered for the goods. He supplied this loss in accordance with the requirements of appellant to the extent of his ability, by having statements made by numerous merchants from whom he made purchases, during the time required by the company, copies of which were furnished appellant. He furnished an invoice of the goods, which was accepted by the adjuster of the company without requiring a verification thereof. It has been held in this State in well-considered cases, where an insurance company, in answer to a suit on a policy of insurance, alleges a failure on the part of the insured to produce bills, a reply that they were destroyed by fire, furnishes a good excuse. *Aurora Fire Ins. Co.* v. *Johnson* (1874), 46 Ind. 315; *Ger-*

*mania Ins. Co.* v. *Johnson* (1874), 46 Ind. 331; *German Alliance Ins. Co.* v. *Newbern* (1910), 25 Okla. 489, 106 Pac. 826, 28 L. R. A. (N. S.) 337; *Franklin Ins. Co.* v. *Culver* (1855), 6 Ind. 137. It must follow therefore, that the law of this State is that where sufficient reason is given for not producing books and papers required by the policy, it meets the requirements of the law.

It has also been repeatedly decided in this State that where provisions in an insurance policy are inserted for the sole benefit of the insurance company, they will be most 2. strongly construed in favor of the insured. *Continental Ins. Co.* v. *Vanlue* (1890), 126 Ind. 410, 415, 26 N. E. 119, 10 L. R. A. 843; *Behler* v. *German Mut. Fire Ins. Co.* (1879), 68 Ind. 347, 351; *Milwaukee Mechanics Ins. Co.* v. *Niewedde* (1894), 12 Ind. App. 145, 39 N. E. 757; *Aetna Ins. Co.* v. *Strout* (1896), 16 Ind. App. 160, 44 N. E. 934; *Kentucky Mut. Ins. Co.* v. *Jenks* (1854), 5 Ind. 96; *Indiana Mut. Fire Ins. Co.* v. *Conner* (1854), 5 Ind. 170. A stipulation in a policy that "no agent has 3. power to waive any condition of this contract unless by written endorsement thereon", refers to conditions essential to make the contract obligatory and binding between the parties in the first instance, and to its continuing force and obligation till loss occurs, but does not refer to stipulations requiring the assured to make proof of loss in a special manner, and such stipulations may be waived by an agent without endorsement. · *Indiana Ins. Co.* v. *Capehart* (1886), 108 Ind. 270, 8 N. E. 285; *Havens* v. *Home Ins. Co.* (1887), 111 Ind. 90, 12 N. E. 137, 69 Am. Rep. 689; *Commercial, etc., Ins. Co.* v. *State, ex rel.* (1887), 113 Ind. 331, 335, 15 N. E. 518; *Phoenix Fire Ins. Co.* v. *Pickel* (1891), 3 Ind. App. 332, 334, 29 N. E. 432.

Although an insurance policy on its face prohibits 4. any agent from waiving any of its conditions where other proofs than those required in the policy are accepted by an agent of the company, duly authorized to

act with reference to that subject, the company will be deemed to have waived the proof required by the policy. *Indiana Ins. Co.* v. *Capehart, supra; Germania Fire Ins. Co.* v. *Pitcher* (1902), 160 Ind. 392, 64 N. E. 921, 66 N. E. 1003. See, also, *American Fire Ins. Co.* v. *Sisk* (1893), 9 Ind. App. 305, 36 N. E. 659; *Western Assur. Co.* v. *McCarty* (1897), 18 Ind App. 449, 48 N. E. 265; *German American Ins. Co.* v. *Sanders* (1896), 17 Ind. App. 134, 46 N. E. 535; *Aetna Ins. Co.* v. *Shryer* (1882), 85 Ind. 362; *Indiana Ins. Co.* v. *Pringle* (1898), 21 Ind. App. 559, 52 N. E. 821.

So it must be held, in this case, we think, in all fairness, that the waiver clause in the policy, as well as the waiver agreement subsequently procured of the insured by the adjuster of the company, cannot be held to require impossible things of a property owner who has paid for his insurance and sustained a loss about which no question is raised in the evidence except as to the amount thereof, and that question being settled adversely to appellant's contention by the jury, this court cannot disturb the verdict. It follows that the judgment is sustained by sufficient evidence and is not contrary to law.

1.

The motion for peremptory instructions was properly overruled. We have also examined the instructions which were given over objections, and those which were refused over objections, and find the law was correctly stated within the issues and the evidence. No error appears in the record which warrants this court in reversing the case. Judgment affirmed.

Note.—Reported in 101 N. E. 734. As to waiver of condition in policies requiring waivers to be endorsed in writing, see 107 Am. St. 99. As to the effect of limitations on an agent's authority to waive conditions in an insurance policy, see 2 Ann. Cas. 112, 9 Ann. Cas. 380. See, also, under (1) 19 Cyc. 849, 851; (2) 19 Cyc. 656; (3) 19 Cyc. 860; (4) 19 Cyc. 862.