H. W. BELDEN *v.* BOSTON & MAINE RAILROAD.

May Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed November 13, 1914.

*Carrier—Conversion of Goods—Delivery Without Presentation of Bill of Lading—Measure of Damages.*

Where a carrier, on the day it was received at its destination, delivered a shipment of butter to the prospective purchaser, without presentation of the bill of lading, to which was attached a draft for more than the value of the butter, the carrier is not made liable for the amount of the draft, instead of the actual value of the butter, by a letter written the station agent directing him to ship the butter elsewhere if the draft attached to any bill of lading was not paid within five days, as the designated contingency had not occurred.

Though drafts attached to a bill of lading are for more than the value of the shipment, the actual value thereof, less unpaid freight thereon, is the measure of recovery for delivering it to the prospective purchaser without presentation of the bill of lading.

ASSUMPSIT. Plea, the general issue. Trial by jury at the September Term, 1913, Washington County, *Butler*, J. pre-

siding.  Verdict directed for the plaintiff, in the circumstances stated in the opinion, for $299.50.    The plaintiff excepted. The opinion states the case.

H. S. Peck and Benj. Gates for the plaintiff.

W. B. C. Stickney for the defendant.

WATSON, J.   The plaintiff seeks to recover aggregate amount of three certain drafts, one for $124.00, one for $300.60, and one for $189.70, being dated August 23, September 6, and September 13, 1909, respectively.   These drafts were severally attached by the plaintiff to three separate bills of lading of corresponding dates, and sent by him through a bank in this State to a bank at Fitchburg, Massachusetts, for collection.

On each of the dates named, the plaintiff delivered a quantity of butter to the Central Vermont Railway Company at its station in Middlesex, this State, to be shipped to Fitchburg, each time taking a bill of lading showing that the butter was consigned to the order of the consignor, with directions to "Notify J. A. Jones, Fitchburg, Mass."   On the back of each bill of lading was an indorsement as follows: "Deliver to J. A. Jones upon presentation of this B-L. H. W. Belden."   Way-bills were issued by the station agent of the initial company, which accompanied the transportation and were delivered to the agent of the defendant (the connecting carrier) at Fitchburg, on arrival there, showing the consignee, with directions to notify Jones,—in these respects like the bills of lading.

Each shipment of butter was received by the defendant at Fitchburg about noon of the day following the date of its shipment, and on the same day it was delivered by the defendant's agent to said J. A. Jones without the presentation of the bill of lading, and without the knowledge or consent of the plaintiff.

All the foregoing facts appeared from plaintiff's evidence; and it was agreed by the parties at the trial that the value of the butter was, first shipment, $124.00, second shipment, $97.50, third shipment, $78.00, aggregating $299.50.

Two certain letters written by plaintiff to defendant's freight agent at Fitchburg, were introduced in evidence and marked exhibits "P" and "Q," respectively.   "P" was dated March 5, 1909.   It related exclusively to a shipment of butter.

before then, from the plaintiff to Jones, and had no bearing upon any question involved in this case. The body of "Q" read: "If at any time J. A. Jones fails to pay any of the drafts with bill of lading attached and there is no prospect of his doing it within three or four days after butter arrives at Fitchburg, you may ship the butter to the Allen Beeman Company, Norwich, Conn., and notify me at the time you do so. This is liable perhaps to occur, and if it does I do not want the butter to lay around more than 5 days at your station." Defendant introduced no evidence.

The plaintiff asked the court to instruct the jury to return a verdict in his favor for the full amount of the three drafts with interest on each and costs; that in case the court should rule that he could recover on the first two drafts only the value of the butter actually shipped, then to instruct the jury that he could recover the full amount of the third draft with interest, on the ground that plaintiff's letter of September 9, (exhibit "Q") was knowledge to the defendant, or sufficient to put it upon inquiry, that there was to be a draft attached to said third bill of lading, and contained directions to the defendant how to dispose of the butter so shipped in case the draft was not paid and the bill of lading surrendered. The plaintiff claimed the right to go to the jury on the question of entire damages in the first view, and if that be ruled against him, then on the question of damages based on the effect of said letter, claiming that it presented a question of fact and had a tendency to show that plaintiff gave defendant full notice and direction as to the disposition of this third shipment of butter and of any subsequent shipment. The court declined to instruct the jury upon either point as thus requested, and declined to permit the plaintiff to go to the jury on either question as to damages, holding that the letter presented no fact for the jury, but one of law for the court. To each of these rulings the plaintiff excepted.

The court instructed the jury to return a verdict in favor of the plaintiff for the full amount of the value of the three shipments of butter as above stated, aggregating $299.50, with interest thereon from the date of the several shipments, and costs; to which plaintiff excepted. The verdict rendered was in accordance with this instruction.

The first two shipments of butter could not be affected by anything contained in letter "Q." The butter of the third

shipment was delivered to Jones on the same day that it arrived at the place of destination about noon, and while the terms and directions of the way-bill were yet in force without modification and to be acted under until the contingency mentioned in "Q" should arise. Hence the conversion from which defendant's liability arises, is the resulting consequence of its deviation from the requirements of the original undertaking as connecting carrier, and upon the case presented by the evidence and the agreement of the parties as to the value of the butter converted, there was nothing for the jury.

The damage suffered by the plaintiff was the value of the butter at Fitchburg, less the unpaid freight thereon, if any there was to be paid by him. This fully indemnifies him for the loss sustained, and he is in law entitled to nothing more. *Winslow, Ward & Co.* v. *Vermont & Mass. R. Co.*, 42 Vt. 700, 1 Am. Rep. 365; *Joslyn* v. *Grand Trunk Ry. Co.*, 51 Vt. 92; *Sturgess* v. *Bissell*, 46 N. Y. 462. It cannot be said that because the drafts were for more than the value of the butter, there was any implied obligation on the part of the defendant to pay the plaintiff more in damages than the amount of the loss he sustained. *Louisville & Nashville R. Co.* v. *Hartwell*, 99 Ky. 436, 36 S. W. 183, 38 S. W. 1041. This in effect disposes of all the questions presented, and no error appears.

*Judgment affirmed.*