## TYLER REFRIGERATION CORPORATION, Plaintiff-Appellant,

v.

## IML FREIGHT, INC., Defendant-Appellee.

### No. 3–181A5.

Court of Appeals of Indiana, Third District.

Nov. 10, 1981.

---

3. This section was amended again in 1978.

Robert W. Gilmore, Jr., Michigan City, for plaintiff-appellant.

R. Kent Rowe, Lewis C. Laderer, Jr., Robert C. Douglas, Jr., Rowe & Laderer, South Bend, for defendant-appellee.

GARRARD, Judge.

Tyler Refrigeration Corporation brings this appeal from a favorable judgment it received in an action to recover damages from IML Freight, Inc. for the misdelivery of goods. The parties stipulated to all relevant facts and the trial court granted Tyler a summary judgment and damages in the amount of $6,085.05.

The sole issue raised on appeal is whether the trial court applied the correct measure of damages. We affirm.

Tyler (the shipper) contracted with IML (the carrier) on February 9, 1978 to deliver certain goods to California. The terms of this agreement were set forth in an order bill of lading. The shipper delivered the goods to the carrier and received the bill of lading. The invoice indicated that the value of the shipment was $6,085.05.

The shipper then forwarded the order bill of lading along with a sight draft in the amount of $6,085.05 to the appropriate California bank on February 13, 1978. However, on February 14, 1978 the shipper sent a second sight draft in the amount of $20,-475.08 to the California bank with instructions to attach it to the original order bill of lading and to return the original draft. It appears from the record that the amount of this draft over $6,085.05 represents a previous debt owed to the shipper since June, 1977. The carrier was not informed of the amount of this sight draft.

The carrier delivered the shipment to the purchaser without requiring presentation of the order bill of lading. The sight draft was ultimately returned by the bank to the shipper unpaid.

The shipper premises his entire argument on the theory that order bills of lading are analogous to C.O.D. shipments. For liability in C.O.D. shipments see Annot., 27 A.L. R.3d at 1320. We agree that the two situations are analogous; however, we find on close examination of the cases which the shipper cites that they do not support his conclusion as to the correct measure of damages.

A carrier under a C.O.D. contract serves in a dual function: as bailee to transport the goods, and as the shipper's agent to collect the price from the purchaser. The policy of C.O.D. shipments is to assure that the shipper will not be left with only legal recourse against the purchaser, since the carrier cannot deliver the goods without collecting the C.O.D. amount. When the carrier delivers the goods but fails to collect the C.O.D. amount, the shipper has a cause of action for damages rather than for debt. *Joseph Mogul, Inc. v. C. Lewis Lavine, Inc.* (1928), 247 N.Y. 20, 159 N.E. 708; *National Van Lines, Inc. v. Rich Plan Corporation* (5th Cir. 1967), 385 F.2d 800; *Cermetek, Inc. v. Butler Avpak, Inc.* (9th Cir. 1978), 573 F.2d 1370. "The damages must be measured by the amount of loss which the consignor [shipper] actually suffered by the breach." *National Van Lines, Inc., supra*, at 803. Once it is shown by the shipper that the carrier has delivered the goods but fails to collect, a prima facie case is made that the amount of damages is the amount to be collected. This shifts to the carrier the burden of proving mitigation of damages, which is justified by the majority rule that measures damages by actual loss. *National Van Lines, supra.* Thus, where there is not a reasonable probability that collection would have been possible had the carrier done his duty, the actual damages of the shipper can be no greater than the value of the goods wrongfully surrendered. *Joseph Mogul, Inc., supra; Cermetek, Inc., supra.* All of the above cases deal with the distinction between price and value. That is not an issue in the case before us. Here the amount to be collected on the sight draft represents the price of the current misdelivered shipment plus a prior debt. The carrier concedes damages, as found by the trial court, in an amount equal to the price of the goods shipped. The above cited cases more closely support that judgment than they do the position taken by the shipper in his brief.

There is a further important distinction between the C.O.D. cases and the facts of the case before us. In all of the cases cited by the shipper and discussed above there was a fixed amount to be collected *which the carrier knew* at the time he accepted the goods. In the case before us the carrier had no knowledge of the amount of the sight draft, which was forwarded to the California bank five days after he had taken delivery of the freight.

This case involves an interstate shipment of goods and is within the ambit of the Interstate Commerce Act, IC 26–1–7–103; *Hogan Tr. and Storage Corp. v. Waymire* (1980), Ind.App. 399 N.E.2d 779. The Carmack Amendment, 49 U.S.C. § 20(11) sets forth the measure of damages for any loss, damage, or injury to shipped property, and is made applicable to motor carrier by 49 U.S.C. § 319. It states:

"...[A]ny such common carrier ... so receiving property for transportation from a point in one State ... to a point in another State ... shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it."

The Supreme Court in *Pere Marquette Ry. v. J. F. French Co.* (1921), 254 U.S. 538, 41 S.Ct. 195, 65 L.Ed. 391, analyzed the effect of the Interstate Commerce Act on a shipper's loss due to a carrier's misdelivery, a situation not directly covered by the Carmack Amendment, and said:

"There is nothing in the act which imposes upon the carrier a specific duty to the shipper to take up the bill of lading. Under § 8 [U.S.C.A. 49 § 88] the carrier is not obliged to make delivery except upon production and surrender of the bill of lading; but it is not prohibited from doing so. If instead of insisting upon the production and surrender of the bill it chooses to deliver in reliance upon the assurance that the deliveree has it, so far as the duty to the shipper is concerned, the only risk it runs is that the person who says that he has the bill may not have it. If such proves to be the case the carrier is liable for conversion and must, of course, indemnify the shipper for any

loss which results. Such liability arises not from the statute but from the obligation which the carrier assumes under the bill of lading."

254 U.S. at 546, 41 S.Ct. at 198–199.

Thus, since the U.C.C. does not address the problem, it is the common law of contracts which controls this case. *See* IC 26–1–7–301, *et seq.*

The Supreme Court of Vermont, in a case involving misdelivery similar to ours, stated:

"The damage suffered by the [shipper] was the value of the butter at [the point of delivery], less the unpaid freight thereon, if any there was to be paid by him. This fully indemnifies him for the loss sustained, and he is, in law, entitled to nothing more. [citations omitted] It cannot be said that because the drafts were for more than the value of the butter, there was any implied obligation on the part of [the carrier] to pay the plaintiff more in damages than the amount of the loss he sustained."

*Belden v. Boston & M.R.R.* (1914), 88 Vt. 300, 92 A. 212, 213.

In a later case, New York held that the correct measure of damages for misdelivery of goods under an order bill of lading was the actual value of the goods at their destination point at the time of delivery. *Hatch v. New York Cent. R. Co.* (1924), 122 Misc. 707, 203 N.Y.S. 807. That court stated:

"The [shipper] has sued for damages, claiming that the measure thereof is the amount of the sight draft.... [T]he rule contended for by the [shipper] might often result in permitting a gross fraud to be perpetrated.... [T]o ever require a carrier to pay for such an unauthorized delivery of goods any amount in excess of the value of the property would be punitive and altogether unfair."

203 N.Y.S. 807.

We also find pertinent the comment of the Interstate Commerce Commission on the practice of using an order bill of lading and attached sight draft as a debt collection technique.

"There is one matter, however, referred to by the defendants which compels some comment. They urge that a carriers' liability for misdelivery of a shipment moving on an order-notify bill of lading is the amount of the sight draft which accompanies the bill of lading, and by way of showing the alleged greater risk, they refer to the fact that amounts above the value of the articles are sometimes included in the drafts as a method of collecting old debts or obligations. Translated into a specific example, it means that if a carrier misdelivers an article valued at $100 and the sight draft is for that amount plus $1,000 of old debts, the fixed liability of the carrier is $1,100. This theory of the liability of common carriers is not supported by any references to statutes or decisions. And it strikes us as a rather novel idea of the law of damages."

*Southeast Shippers Assn. v. Associated Transport, Inc.* (1953), 61 M.C.C. 645, 646.

The measure of damages for breach of a contract duty is limited by what is reasonably foreseeable at the time the contract is entered into. *Hadley v. Baxendale* (1854), 9 Ex. 341, 156 Eng. reprint 145, 5 Eng.Rul.Cas. 502; *Strong v. Commercial Carpet et al.* (1975), 163 Ind.App. 145, 322 N.E.2d 387. In cases arising directly under the Carmack Amendment it has been said that only such damages as may be reasonably within the contemplation of the parties at the time they made the contract can be recovered. *F. J. McCarty Co. v. Southern Pac. Co.* (9th Cir. 1970), 428 F.2d 690. To recover special damages the shipper must give notice to the carrier of his expectations. *Hector Martinez & Co. v. Southern Pac. Transp. Co.* (5th Cir. 1979), 606 F.2d 106, *reh. den.* 609 F.2d 1008, *cert. den.,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838.

Applying these principles to the case before us we find that the correct measure of damages for the misdelivery of goods, at least in the absence of any agreement imposing greater liability, is the actual value of those goods at their destination at the time of delivery. The shipper here claims

special damages, i. e., the amount of the sight draft representing a prior debt with the purchaser, but the carrier was never given notice of those expectations, nor can it be said it impliedly agreed to them. Damages in excess of the value of the goods delivered were not recoverable by the shipper and the trial court was correct to limit the damages to the value of the shipped goods.

Affirmed.

HOFFMAN, P. J., and STATON, J., concur.