**INDIANA INSURANCE COMPANY,**
Appellant,

v.

**PLUMMER POWER MOWER & TOOL RENTAL, INC., Plummer 4WD Service, Inc., Joseph F. Plummer and Deborah L. Plummer, Appellees.**

No. 29A04–9007–CV–316.

Court of Appeals of Indiana,
Fourth District.

April 22, 1992.

Richard A. Smikle, Michael A. Wukmer, Terri A. Czajka, Ice, Miller, Donadio & Ryan, Indianapolis, John D. Proffitt, Campbell, Kyle & Proffitt, Carmel, for appellant.

David B. Hughes, Indianapolis, Stephen W. Cook, Cook & Byers, Noblesville, for appellees.

CONOVER, Judge.

Plaintiff–Appellant Indiana Insurance appeals a judgment and award of compensatory damages, attorney fees, and punitive damages to Defendants–Appellees Plummer Power Mower & Tool Rental, Inc., Plummer 4WD Service, Inc., Joseph F. Plummer, and Deborah L. Plummer (collectively, the Plummers).

We affirm in part and reverse in part.

The following restated issues are dispositive:

1. whether a new trial on the issue of breach of contract is warranted because of the trial court's exclusion of evidence;

2. whether the Plummers' were barred from recovery because of failure to produce documents required by the contract;

3. whether the trial court erred in awarding consequential damages;

4. whether the trial court erred in awarding attorney fees; and

5. whether the punitive damage award was supported by clear and convincing evidence.

On the morning of November 26, 1985, an explosion and fire occurred at a commercial building in Brownsburg, Indiana. The building was owned by the Plummers, who operated their two businesses within its confines. The building and its contents were insured by Indiana Insurance (Insurer).

On January 24, 1986, the Plummers submitted formal proofs of loss. On March 24, 1986, Insurer sent a letter informing the Plummers and their representatives that the claim was denied. Denial was based on failure to document losses and Insurer's belief that the fire was intentionally set by the Plummers.

Insurer subsequently filed a declaratory judgment action. The complaint alleged a genuine dispute as to the cause of the fire. The Plummers filed an answer and counterclaim seeking reformation of the contract to include them as insureds, damages for breach of contract, and punitive damages. The Plummers also filed a complaint seeking reformation, damages for breach of contract, and punitive damages. The two cases were consolidated.[1]

The case was tried before a jury, which found for the Plummers on all issues. The

---

1. The trial court reformed the contract to name the Plummers as insureds. Insurer does not question the reformation of the contract.

trial court then entered judgment against Insurer for $4,180,947.84 plus costs. Of this amount, $465,020.69 represented the amount recovered under the contract, $215,927.15 represented the amount for consequential damages, and $3,500,000.00 represented the amount for punitive damages. The trial court later ordered Insurer to pay $250,000.00 in attorney fees.

Complete statements of the facts appear below as they pertain to each issue.

## SECTION I: BREACH OF CONTRACT

### A. *Evidentiary Questions*

Insurer contends the trial court erred in excluding allegedly false tax returns and the testimony of certain witnesses. Insurer further contends the exclusion of this evidence warrants a new trial on the question of its liability under the contract.

■ A trial court has considerable latitude in the admission or exclusion of evidence. *Terre Haute National Bank v. Stewart* (1983), Ind.App., 455 N.E.2d 362, 368. Where evidence is erroneously excluded, reversal is justified only if the error relates to a material matter or if exclusion substantially affects the rights of the parties. *Manns v. State Department of Highways* (1989), Ind., 541 N.E.2d 929, 936. An error in the exclusion of evidence is harmless when the record discloses the excluded evidence was otherwise presented to the jury. *Id.*

■ Insurer first contends the trial court erred in excluding tax returns which the Plummers had allegedly submitted to a local bank. The returns were part of the loan file on the building which eventually burned. The returns, which conflicted with returns filed with the Federal Government, were offered into evidence to support Insurer's theory that the Plummers had an overall scheme which began with fraud upon the bank and culminated in arson.

■ Even though Insurer was not permitted to put the returns into evidence, it was able to enter evidence of the Plummers' financial condition during the same period through financial statements contained in the same bank file. These financial statements were sufficient to show the Plummers' alleged fraud in securing the loan. A ruling to exclude evidence, even if erroneous, is harmless where the evidence excluded is covered by other evidence accepted by the trial court. *See, Manns, supra* (exclusion of a document was not reversible error where the same information was separately received through subsequent testimony); *Costa v. Costa* (1953), 124 Ind.App. 128, 115 N.E.2d 516, 518 (exclusion of testimony is harmless where the excluded testimony is sufficiently covered by other evidence).

■ Insurer next contends the trial court erred in excluding the testimony of Donna Beyer, the wife of Insurer's treasurer. Mrs. Beyer would have testified that, some twenty years earlier, Mr. Plummer told her he had reported his car was stolen, stripped it, and set it on fire to obtain insurance proceeds. The trial court excluded Mrs. Beyer's testimony because it was collateral.

■ A trial court is accorded wide discretion in ruling evidence inadmissible on the grounds of relevancy due to remoteness. *Bryan v. State* (1983), Ind., 450 N.E.2d 53, 61. In the present case, the court concluded the testimony of a conversation which allegedly occurred twenty years in the past was simply too remote to have any probative value. We cannot say the trial court abused its discretion by so ruling.

■ Insurer also contends the trial court erred in excluding testimony by Vernon Large, an investigator for Indiana Gas. Large would have testified that the Detroit Radiant heaters located in the Plummers' building were not the cause of the explosion and fire.[2]

Insurer presented two other experts who testified the radiant heaters were not the cause of the explosion and fire. Insurer has not shown how the exclusion of Large's cumulative testimony constituted prejudice. Therefore, exclusion of Large's

---

**2.** As discussed below in Section II, the Plummers' experts testified the malfunction of the Detroit Radiant heaters caused the explosion and fire.

testimony did not constitute reversible error. *See, Manns, supra,* at 936.

■ In its final argument on the issue of breach of contract, Insurer contends the Plummers were not entitled to recover because they failed to submit the documentary evidence of loss required by the contract. The contract provides "no action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with...." (R. 4291).

Both parties presented evidence on this issue. Insurer's employees testified there was a general lack of production of invoices and receipts to substantiate the Plummers' replacement of inventory claim. An employee also testified the Plummers refused to submit tax returns to substantiate business income claims. The Plummers testified regarding their attempts to reconstruct records which had been destroyed in the fire. They also testified regarding a letter sent to suppliers in an effort to obtain documentation. At the conclusion of trial, the jury was instructed on the issue.

The Plummers do not deny the terms of the policy require the furnishing of particularized documentation. Neither do they deny that they failed to provide portions of the documentation requested. Thus, there was a breach of the contract unless some principle excuses the Plummers failure to provide the required documentation. Such principle is found in *Ohio Farmers Insurance Co. v. Glaze* (1913), 55 Ind.App. 147, 101 N.E. 734. In *Glaze,* the insured's records were destroyed by fire and he was asked by the insurer to obtain duplicate bills from suppliers to authenticate his loss of inventory. The insured gathered what documentation was available and obtained statements from suppliers who were unable, because of their system of recording cash purchases, to document purchases made by the insured. The court held the insured had substantially complied with the requirements of the insurance policy. The court further held "where an insurance company ... alleges a failure on the part of the insured to produce bills, a reply that

they were destroyed by fire furnishes a good excuse." 101 N.E. at 736. The basis for this holding was that an insurer "... cannot be held to require impossible things of a property owner...." *Id.* at 737.

Insurer correctly notes the advanced recordkeeping and computerization of suppliers has increased to the point where it is much easier for an insured to procure duplicate documentation from suppliers. However, where as here, there was some attempt at securing documentation from suppliers, the ultimate decision is left to a properly instructed jury to decide whether the insured has substantially complied with the policy requirements. We will not reweigh the evidence to overturn the jury's findings.

## B. *Consequential Damages*

Consequential damages were awarded to compensate the Plummers for costs arguably incurred because of both the lengthy investigation into the fire and the ultimate denial of the claim. Of the $215,000.00 award, $125,000.00 represented interest and expenses the Plummers owed on their personal residence and the real estate on which the burned building was constructed. The remaining amount of the award represented reimbursement for costs incurred in defending actions filed by various creditors.

Insurer contends the award of consequential damages should be overturned for three reasons. First, citing *Lloyds of London v. Lock* (1983), Ind.App., 455 N.E.2d 967, Insurer argues an award of damages cannot exceed the limits of the Plummers' policy. Second, citing *Burleson v. Illinois Farmers Insurance Co.* (S.D.Ind.1989), 725 F.Supp. 1489, it argues the consequential damage award cannot stand because denial of the Plummers' claim was made in good faith. Third, it argues that the damages incurred by the Plummers were not proximately caused by denial of the claim.

■ In *Lloyds of London v. Lock* (1983), Ind.App., 454 N.E.2d 81, the insurer provided coverage for the insureds' trucks. The policy specifically limited liability to $100,-

000.00. Two of the trucks were stolen and the insureds reported the theft to the police and Lloyds. The trucks were recovered by police several months later. The insureds sought to recover on the policy, but Lloyds denied the claim on the grounds that no clear cut theft had occurred.

The insureds sued Lloyds and recovered $190,000.00 in compensatory damages and $445,000.00 in punitive damages. The First District of this court remanded on the punitive damages issue, but found the compensatory damage award within the scope of the evidence presented at trial. However, in a two sentence opinion on rehearing, the court modified its prior opinion "to the extent that the appellants' liability is not to exceed the limits of the insurance policy." *Lloyds, supra,* 455 N.E.2d 967. Later, we took a different tack.

In *Liberty Mutual Insurance Co. v. Parkinson* (1985), Ind.App., 487 N.E.2d 162, *reh. denied,* 491 N.E.2d 229 (1986), *trans. denied,* the insurer informed the insured that if she sought recovery under her uninsured motorist coverage her rates would go "sky high". Accordingly, the insured did not initially file a claim.

The insured later consulted an attorney who determined the policy would cover most of her losses. The insured's attorney negotiated a settlement with the insurer for payment of the policy limits. The settlement release forms reserved the insured's right to proceed for damages caused by bad faith. *Id.* at 163.

The insured brought an action against the insurer for damages arising out of the delay in processing her claim because of the insurer's misleading statements. She was awarded $2,000.00 in compensatory damages and $40,000.00 in punitive damages. We affirmed both awards. We began our discussion of the compensatory damage issue by noting "Indiana has long recognized that there is a legal duty implied in an insurance contract that the insurer must deal in good faith with its insured. This duty is breached when an insurer fails to settle a claim that could not in good faith be disputed." *Id.* at 164. We then held:

*Although appellant [insurer] may have settled with Parkinson [insured] for all benefits due under the policy, Parkinson did not receive all she was due under the contract.* The contract contained a promise, implied in law, that Liberty Mutual would deal fairly with her in the settlement of any claim. Liberty Mutual breached this term of the contract by discouraging Parkinson from filing a claim that could not in good faith be disputed. Thus, Parkinson was entitled to compensation for the breach, including damages for the delay in the settlement of her claim, an item that was not included in the settlement agreement. (Emphasis supplied).

*Id.* at 165.

The holding in *Liberty Mutual* clearly allows the recovery of damages beyond the policy limits. The specific language of the case mirrors language quoted in *Burleson, supra,* wherein the court states "the policy limits restrict the amount the insurer may have to pay in the performance of the contract, not the damages that are recoverable for its breach." *Burleson,* 725 F.Supp. at 1496 (*quoting Lawton v. Great Southwest Fire Insurance Co.* (1978), 118 N.H. 607, 392 A.2d 576, 579). We believe *Liberty* and *Burleson* announce the better rule and apply it here.

Insurer contends *Burleson, supra,* is persuasive authority that in Indiana an insured must prove the damages caused were the result of an insurer's bad faith in either delay in settlement or denial of a claim. In *Burleson,* the insured's house burned down and he submitted a claim under his policy with Illinois Farmer's Insurance. A probable cause affidavit was sworn out by a police detective in which he concluded Burleson had committed arson. An information was also filed charging Burleson with damaging property with the intent to defraud Farmers Insurance. When Farmers Insurance failed to pay his claim, Burleson filed an action for breach of contract in which he sought damages under the contract as well as consequential damages. The action was removed to the federal district court which granted sum-

mary judgment for Farmers Insurance on the issue of consequential damages.[3]

The *Burleson* court examined Indiana case law and determined Indiana allowed the recovery of consequential damages arising from an insurer's actions. However, the court went on to discuss the public policy considerations involved where an insurer's denial of a claim results from a good faith dispute. The court examined our supreme court's opinion in *Vernon Fire & Casualty Insurance Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173, and determined that the case holds even if consequential damages are recoverable as a matter of contract law in Indiana, they are precluded under a public policy analysis when they arise from a good faith dispute. *Burleson*, 725 F.Supp. at 1497. The court quoted the following language from *Vernon* in reaching its decision:

> It is evident that the exercise of this right [to disagree] may directly result in the intentional infliction of temporal damage, including the damage of interference with an insured's business (which an insured will undoubtedly consider to be oppressive). The infliction of this damage has generally been regarded as privileged, and not compensable, for the simple reason that it is worth more to society than it costs, i.e., the insurer is permitted to dispute its liability in good faith because of the prohibitive social costs of a rule which would make claims nondisputable. Insurance companies burdened with such liability would either close their doors or increase premium rates to the point where only the rich could afford insurance.

725 F.Supp. at 1497 (*quoting Vernon*, 349 N.E.2d at 181).[4]

In *Vernon*, our supreme court reaffirmed the availability of compensatory and consequential damages against a promisor who "decides for whatever reason not to live up to his bargain" as "a needed measure of stability and predictability to the free enterprise system." 349 N.E.2d at 180. Accordingly, "a promisor's motive for breaching his contract is generally regarded as irrelevant because the promisee will be compensated for all damages proximately resulting from the promisor's breach." *Id.* After making these statements, the *Vernon* court turned its attention to punitive damages. In its discussion of punitive damages, it made the statements quoted in *Burleson*, statements which pertained solely to the punitive damage issue. Read in context, the statements quoted in *Burleson* have no application to the issue of consequential damages.

The privilege discussed in *Vernon* guarantees that an insurer will not be punished by the imposition of punitive damages for something which public policy gives it the power to do. Such privilege prevents the insured from receiving a windfall when the insurer does nothing wrong.

On the other hand, when the insurer's exercise of the right is erroneous or oppressive, and such error is the proximate cause of damage, there is no privilege which allows the insurer to escape payment of such damages. *Vernon* does not establish a privilege which will allow the insurer to pay nothing for the damages proximately caused by its error or oppression while the insured, having already sustained a

---

3. Prior to the grant of summary judgment, Burleson was acquitted on the arson charge in Marion Municipal Court. 725 F.Supp. at 1489.

4. The *Burleson* court went on to state:
   If this Court were free to decide the issue for the State, it might well reach a different result, for the principles of law governing contracts, if properly applied, suggest the outcome of these cases. One of those maxims is that the breaching party's state of mind is of no consequence; that is to say, it is totally irrelevant if there are completely valid reasons for disputing coverage when it is finally determined that the insurer did, in fact, breach the contract. If public policy considerations were not considered and liability for consequential damages were allowed, the insurers would no doubt be able to adjust accordingly. If part of that adjustment included higher premiums, then so be it, for if the insurance policy is intended to ensure that the mortgage payments continue, and if that means that extra-policy damages must be paid where the contract is breached, then that extra cost could be spread among all policyholders.
   725 F.Supp. at 1497.

loss from which the original dispute arose, languishes under the burden of paying for the insurer's mistake.[5]

■■■ Insurer argues the consequential damage award was for damages too remote to have been proximately caused by insurer's breach. It also contends the damages were unforeseeable.

■■■ A breaching party is liable for damages which are the direct, probable, and proximate result of its breach. *Meridian Mutual Insurance Co. v. McMullen* (1972), 152 Ind.App. 141, 282 N.E.2d 558, 566. The measure of damages for breach of contract is limited by what is reasonably foreseeable at the time the contract was entered into. *Tyler Refrigeration Corp. v. IML Freight, Inc.* (1981), Ind.App., 427 N.E.2d 718, 721 (*citing Hadley v. Baxendale* (1854), 9 Ex. 341, 156 Eng. reprint 145, 5 Eng.Rul.Cas. 502).

When a business owner contracts for insurance on his primary source of income, he has the expectation of prompt payment so that he can rebuild and continue his business after the occurrence of a catastrophe such as the fire involved in this case. Delayed payment, whether as a result of good or bad faith, will undoubtedly result in the failure of the owner's business. He cannot generate sufficient income to pay his bills because he has no business. The damages incurred from such inability to pay bills flow directly, and are proximately caused by, the insurer's failure to pay. The likelihood of such damages is only unforeseeable to unreasonably narrow-minded insurers. *See, Burleson, supra,* at 1496; *Hayseeds, Inc. v. State Farm Fire &*

*Casualty* (1986), 177 W.Va. 323, 352 S.E.2d 73, 78. The award of consequential damages for interest and expenses was proper.[6]

■■■ The jury also awarded damages to cover costs for lawsuits filed by the Plummers' creditors. Again, Insurer claims such costs did not proximately result from its breach and were not foreseeable.

Under our analysis above, such costs may be found to be the proximate result of an insurer's breach. However, certain costs making up the award in the present case were clearly not foreseeable and not a direct result of Insurer's breach. Specifically, the costs arising from a suit filed against the Plummers because they sold an item of collateral pledged to the bank were not directly caused by Insurer's breach. (R. 6259–6265). Costs arising from a suit filed by B & W Plumbing did not directly arise from Insurer's breach, but from the Plummers' decision not to pay for B & W's installation of gas piping until the Plummers could determine whether B & W was in any way responsible for the explosion. (R. 6254). Finally, costs arising from suits by Gregory Smith Equipment and Borg Warner Acceptance Corporation filed to recover for unpaid bills were seeking payment for bills due before the fire, and were not the direct result of Insurer's actions. (R. 6276).

## C. Attorney Fees

■■■ Insurer contends the trial court's award of $250,000.00 in attorney fees was improper. Insurer points to the fact the trial court ignored Indiana case law and

---

5. Professor Robert E. Keeton, of Harvard Law School, and Professor Alan I. Widiss, of Iowa School of Law, have questioned the wisdom of liability insurance cases which prohibit the award of consequential damages where the insurer's breach was in good faith (arising from a "fairly debatable" question of liability). *See*, R. KEETON & A. WIDISS, INSURANCE LAW—A GUIDE TO FUNDAMENTAL PRINCIPLES, LEGAL DOCTRINES AND COMMERCIAL PRACTICES § 7.9(d) (1988). They list three reasons for recovery of consequential damages. First, "the imposition of liability for consequential damages ought to encourage an insurer to carefully evaluate its decision whenever a claim is being rejected." Second, "an insured should be

compensated for the adverse economic consequences of having the payment of insurance benefits delayed." Third, "insureds have reasonable expectations that the net value of their insurance benefits will not be reduced by the actions of recalcitrant insurers, and these expectations should be protected." *See*, KEETON, at § 7.9(e).

6. Simply put, the insurer cannot look at an insured's loss of livelihood and loss of home, shrug its shoulders, and hide behind the fact it made an "honest mistake." Delay, whether in good or bad faith, has clearly foreseeable consequences.

adopted the reasoning of the West Virginia Supreme Court in *Hayseeds, supra.* (R. 1187).

■ Indiana follows the general rule that each party involved in litigation must pay his own attorney fees. Thus, attorney fees are not allowable in the absence of a statute or some agreement or stipulation authorizing such an award. *Kikkert v. Krumm* (1985), Ind., 474 N.E.2d 503, 504–505; *United Farm Bureau Mutual Insurance Co. v. Ira* (1991), Ind.App., 577 N.E.2d 588, 597.

Here, the trial court acknowledged that there was no statute or agreement authorizing its award. It explicitly based its award on the reasoning of *Hayseeds* and like cases. In *Hayseeds*, the West Virginia court held that attorney fees arise as a direct result of an insurer's breach and should be paid by the breaching insurer as consequential damages. That is not the rule in Indiana, as above-noted. Even though the holding in *Hayseeds* may be arguably consistent with our discussion of consequential damages, we are not free to ignore the clear precedent of our supreme court. Therefore, we find the trial court erred in awarding attorney fees.

SECTION II: PUNITIVE DAMAGES

■ Insurer challenges the propriety of the punitive damage award. It contends the facts gleaned from its cause and origin investigation established the explosion and fire were caused by arson. Thus, it contends it had a good faith basis to deny the Plummers' claim.

■ In order to justify an award of punitive damages in a contract action, a claimant must produce clear and convincing evidence tending to establish the breaching party acted with malice, fraud, gross negligence, or oppressiveness, but not with a merely mistaken view of law or fact, honest error of judgment, over-zealousness, negligence, or other "non-iniquitous human failing." *Miller Brewing Co. v. Best Beers of Bloomington, Inc.* (1991), Ind.App., 579 N.E.2d 626, 639, *rehearing denied* (*citing Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 362). In re-

viewing an award, this court "will affirm a judgment of punitive damages if, considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find such damages proven by clear and convincing evidence." *Emerson v. Markle* (1989), Ind.App., 539 N.E.2d 35, 40–41, *trans. denied.*

■ In Indiana, an insurer has the right to disagree with an insured's claim as long as the disagreement is based on good faith. *Vernon Fire & Casualty Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173, 181; *Hoosier Insurance Co. v. Mangino* (1981), Ind.App., 419 N.E.2d 978, 982; *Westers v. Auto–Owners Insurance Co.* (S.D.Ind.1989), 711 F.Supp. 946, 949. A good faith dispute over the amount of damages an insured is entitled to recover under his insurance policy will not supply the grounds for punitive damages. *Town & Country Mutual Insurance Co. v. Hunter* (1984), Ind.App., 472 N.E.2d 1265, 1268, *reh. denied, trans. denied.* In other words, an award of punitive damages is justified only if the insured shows the insurer acted in bad faith. Proof of bad faith is defined as clear and convincing evidence which establishes the insurer had knowledge that there was no legitimate basis for denying liability. *Id.* at 1269; *Mangino,* at 983.

Evidence adduced at trial in the present case shows the Plummers hired engineers James McCann and Dewitt Keeler to investigate the explosion and fire. Both men concluded the explosion was caused by a defective Detroit Radiant heater which allowed gas to escape into the air. This escaped gas was ignited by the flame from another heater. McCann also concluded apparently unconnected fires in other parts of the building were caused by "falldown" and swirling embers in the aftermath of the explosion.

Insurer hired Thomas Hulse of Forensic Technologies, Incorporated, to conduct a cause and origin investigation. Beginning on the day of the fire, Hulse engaged in an investigation consisting of questioning of

witnesses, inspection of the burned building and its contents, and consultation with an expert in gas explosions. Hulse provided a written report on February 24, 1986, in which he stated the fire and explosion were caused by an intentional act. Hulse's investigation revealed at least two intentionally set fires, including one on a table in a parts room and one on a tractor seat. Hulse theorized a main gas line had been shut off and a gas pipe disconnected. The fires were then set. The gas was turned back on, accumulated, and was ignited by the set fires. Ignition of the gas resulted in the explosion and large fire which destroyed the building.

Insurer also retained Marvin Salzenstein, an engineer and expert in gas explosions. Salzenstein concluded the Detroit Radiant heaters were not the cause of the explosion. Salzenstein further concluded Hulse's theory of the cause of the explosion and fire was correct. At trial, Salzenstein identified a gas pipe which, in his opinion, was disconnected before the explosion and fire. Salzenstein also explained how the explosion could not have happened in the manner proposed by McCann.

Darrell Brown of the Indiana State Fire Marshall's office conducted an investigation into the cause and origin of the fire. He testified at trial that his conclusions matched those of Hulse. Vernon Large, an investigator for Indiana Gas, also investigated the fire to determine cause and origin. He concluded there were a number of unconnected, intentionally set fires in the parts room.

Both at trial and on appeal, the Plummers primarily base their argument for punitive damages on Insurer's reliance on a "patently flawed" investigation by Hulse and Salzenstein, a "bogus" theory of causation espoused by the same which included sponsorship of a "patently false scenario" about the rupturing of a gas line, resulting in behavior that was "ludicrous" and "outside the bounds of reason." Such labeling,

while possibly effective argument in a jury trial, is no substitute for clear and convincing evidence.

Our review of the multiple volumes of the record reveal no evidence to indicate the investigations and conclusions of the four expert witnesses were unreasonable.[7] The Plummers were, at best, only able to show Hulse and Salzenstein were wrong. Evidence of reliance upon incorrect, but reasonable, theories is not sufficient to justify an award of punitive damages.

Perhaps anticipating this court's ruling on their primary argument, the Plummers also raise secondary arguments in an effort to justify the punitive damage award. In their brief, the Plummers assert the punitive damage award was warranted because of evidence tampering. The Plummers point to certain pipe which Insurer's representatives sawed into two pieces and to pipe which was disconnected. The Plummers place particular importance upon the fact that the trial court "made" Insurer reconnect the disconnected pipe.

The record shows Hulse was permitted to take two long pieces of two inch gas piping from the fire scene. Shortly before trial, the pipes were brought to the courthouse and placed in the court's custody. Prior to transfer of the pipe to the courthouse, Insurer sawed a 10–12 foot section into two pieces to facilitate transportation. At no time did Insurer ever suggest the pipe was sawed by the Plummers or anyone on their behalf. At trial, Hulse clearly testified the pipe had been sawed by a representative of Insurer.

Insurer also had an additional length of pipe from the fire scene which it had previously disconnected. In a colloquy outside the hearing of the jury, the Plummers' attorney requested that the pipe be reconnected. The trial judge responded "Perhaps we should do that and have it connected so that Mr. Hulse can testify as to how he received it." (R. 3331). The pipe was then reconnected. The jury never knew it

---

7. The Plummers contend Insurer did not know of Brown and Large's conclusions before it denied their claim. The extensive testimony by Brown and Large, even if not relied upon by Insurer at the time it denied the Plummers' claim, was relevant in establishing the reasonableness of Hulse and Salzenstein's conclusions.

was disconnected. Later, during closing argument, counsel for Insurer disconnected the pipe to show how disconnection of a pipe could be accomplished.

"Tampering" suggests intentional concealment or deceit. Here, the evidence was not altered with any intent to deceive the court or the jury. The cutting of the pipe was done to facilitate movement, and the jury was clearly informed that Insurer was the party who did the cutting. Contrary to the Plummers' assertion, the disconnection of the pipe did not raise the ire of the trial court. Insurer was not trying to, and did not, deceive the jury in anyway. The Plummers' argument is without merit.

▪ The Plummers also suggest the award of punitive damages was warranted because they were not informed they were under suspicion. They further contend Hulse broke his promise to keep them apprised of the investigation. They rely on *Riverside Insurance Co. v. Pedigo* (1982), Ind.App., 430 N.E.2d 796, to support these contentions.

In *Pedigo*, the court found the insurer deliberately led the insured to believe his claim would be paid as soon as all filing requirements were complied with. In actuality, however, the insurer never intended to pay the claim because it believed the fire was intentionally set. The insurer's continued denial of the claim upon pretextual and deliberately false grounds was held to warrant an award of punitive damages.

The facts of the present case are distinguishable from those in *Pedigo*. Early on in the investigation of this fire, Insurer informed the Plummers of its reservation of rights. Mr. Plummer testified he was informed at the time he submitted his proofs of loss that arson was suspected. Later, the letter of denial specifically stated arson was one of the reasons for nonpayment of the claim. In addition, Hulse kept the Plummers current on what he did in his ongoing investigation. The fact he did not share his conclusions with the Plummers is not evidence of bad faith.

▪ The Plummers also contend Insurer showed bad faith when it secured certain

personal credit information. In support of this contention, the Plummers argue Insurer willfully violated the Fair Credit Reporting Act.

The statute at issue, 15 U.S.C. 1681b, does not "impose any liability upon a person merely for 'negligently causing' a consumer report to be prepared for an impermissible purpose." *Ippolito v. WNS, Inc.* (7th Cir.1988), 864 F.2d 440, 448 n. 8, *cert. denied*, 490 U.S. 1061, 109 S.Ct. 1975, 104 L.Ed.2d 623 (1989). Furthermore, "1681b only limits the dissemination of 'consumer reports' by 'consumer reporting agencies.' It does not, by its plain terms, place any duty upon persons to refrain from requesting consumer reports from individuals for purposes not authorized by the FCRA." *Id.*

The aforementioned statute regulates the activities of consumer reporting agencies, not of insurance companies in the circumstances before this court. The statute cannot be the basis for the award of punitive damages in this case.

AFFIRMED in whole as to compensatory damages and in part as to consequential damages. REVERSED and REMANDED for further proceedings consistent with this opinion as to consequential damages, attorney fees, and punitive damages.

MILLER and RUCKER, JJ., concur.