Argued and submitted July 27, 1992, reversed and remanded for entry of judgment March 10, reconsideration denied April 28, petition for review denied July 27, 1993

(317 Or 272)

Barry SCHOELLER,
*Respondent,*

*v.*

Edward D. KULAWIAK
and Lynda E. Kulawiak,
*Appellants.*

Edward D. KULAWIAK
and Lynda E. Kulawiak,
*Counter-Plaintiffs - Appellants,*

*v.*

Barry SCHOELLER,
Dale S. Crittenden and Barbara A. Crittenden,
and also all other persons or parties unknown,
claiming any right, title, lien or interest in
the property described in
the answer and counterclaim herein,
*Counter-Defendants - Respondents.*

(88-11-147; CA A67382)

848 P2d 619

Richard S. Pope, Portland, argued the cause for appellants. With him on the briefs was Newcomb, Sabin, Schwartz & Landsverk, Portland.

Warner E. Allen, Portland, argued the cause for respondent. On the brief were Jeffrey S. Bennett, Carlton D. Warren and Warren, Allen, Brookshire & King, Portland.

No appearance for counter-defendants - respondents.

Before Warren, Presiding Judge, and Edmonds and Landau,* Judges.

LANDAU, J.

---

* Landau, J., *vice* Riggs, J.

**LANDAU, J.**

This action involves ownership of a disputed strip of land. Plaintiff sued for ejectment, an injunction and trespass. Defendants counterclaimed to quiet title, under a theory of adverse possession, and also for trespass.[1] The trial court declared plaintiff to be the owner of the property, ordered defendants to vacate it and enjoined defendants from entering it except pursuant to a written easement. The trial court awarded plaintiff general and punitive damages. We reverse.

We review the adverse possession claim *de novo*. ORS 19.125(3). The disputed strip of land is between 4 and 6 feet wide and runs the length of the boundary between plaintiff's and defendants' suburban lots. It is subject to a roadway and utility easement. Defendants purchased their lot in 1972. At that time, the strip contained several large Douglas firs and was overgrown with blackberries, poison oak, thistles and other plants. Defendants knew that the strip was not their property, but they did not know who owned it.

In 1973 and 1974, defendants cleared their yard and the strip. After clearing away the underbrush, they put down black plastic and bark dust. They also placed a woodpile between two firs near the eastern end of the strip. In 1975, they planted a dozen rhododendrons west of the woodpile. Defendants testified that they treated the disputed area as part of their yard, using it for barbeques and yard sales.[2] Several neighbors testified that they thought the strip was part of defendants' yard.

By the time plaintiff moved onto his lot in 1978, defendants' landscaping of the strip was complete. Defendants maintained the strip by adding new bark dust, removing spent blooms from the rhododendrons and performing other tasks. They did not allow others to plant anything there; a neighbor planted a shrub near the southwest end of

---

[1] The trial court's decision in defendants' trespass claim is not before us.

[2] The trial court found that defendants' testimony was unreliable; however, that finding does not bind us. *Stice and Stice*, 94 Or App 434, 436, 765 P2d 246 (1988), *aff'd* 308 Or 316, 779 P2d 1020 (1989). This is not a case in which the evidence is in substantial conflict. *See Dillin v. Alexander*, 281 Or 679, 684, 576 P2d 1248 (1978). Defendants' testimony about the use of the strip and its incorporation into their lawn is corroborated by the testimony of witnesses and by photographs.

the strip, and defendants tore it out the same day. Although plaintiff landscaped the rest of his property, including a narrow piece of land that runs between the strip and a gravel drive, he never maintained the strip itself.

█    To establish title by adverse possession, a party must show "clear and positive proof" of actual, open, notorious, exclusive, continuous and hostile possession of the property for a 10-year period.[3] ORS 12.050; *Hopkins v. State of Oregon*, 96 Or App 717, 773 P2d 825 (1989). "Actual" possession requires

> "occupation or use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suitable." *Lee v. Hansen*, 282 Or 371, 376, 578 P2d 784 (1978).

The evidence shows that defendants used the front of the strip for barbecues, yard sales, a woodpile and rhododendrons. This is typical use of land in a suburban neighborhood and clearly and convincingly shows actual possession.

█    That defendants' use of the strip was open and notorious was shown by plaintiff's admission that he noticed that the landscaping was complete when he moved into the neighborhood in 1978, as well as from the testimony of neighbors that the strip looked like part of defendants' yard.

█    To show exclusivity, defendants must show that their possession of the strip was the kind of possession that would characterize an owner's use. *Nelson v. Vandemarr*, 281 Or 65, 74, 573 P2d 1232 (1978). Plaintiff argued, and the trial court found, that defendants failed to establish exclusivity, because their rhododendrons did not grow into a barrier until midway through the statutory period. However, physical exclusion is not required to establish exclusivity. Defendants' planting and care of the rhododendrons shows possession that would characterize an owner's use. Old photographs show that defendants' various uses of the strip were consistent with those of a typical suburban landowner. Thus, defendants' possession was exclusive.

---

[3] Plaintiff's claims for the recovery of possession of the disputed strip were filed on November 29, 1988, so the statutory requirements for adverse possession that were enacted in 1989 do not apply. ORS 105.620.

■ ■    The statutory period for adverse possession is 10 years. ORS 12.050. Plaintiff argues that defendants did not continuously possess the strip for that period. Whether use has been continuous depends on the kind of land involved. In *Almond v. Anderegg*, 276 Or 1041, 1047, 557 P2d 220 (1976), the fact that an adverse possessor only cultivated and harvested agricultural land in season did not interrupt the required continuity. Here, the disputed strip is a suburban yard and garden area. Under the circumstances, defendants need only show that they used or maintained the strip in season. Photographs and testimony show that the strip was used and maintained at seasonable intervals. We find defendants' possession was continuous.

■    Finally, defendants must show that their possession of the strip was hostile and under claim of right. "Hostile" means that the claimant possessed the property intending to be its owner and not in subordination to the true owner. *Knapp v. Daily*, 96 Or App 327, 330, 772 P2d 1363 (1989). Defendants cleared the strip with the intention of expanding their yard. That was hostile. "Claim of right" means that the possession is not permissive and that the possessor has not convinced the true owner that the possessor recognizes the true owner's rights. *Nedry v. Morgan*, 284 Or 65, 71, 584 P2d 1381 (1978). Defendants' use of the strip for a garden and storage area exceeded the terms of the roadway and utility easements, so it was not permissive. Defendants did not lull plaintiff into a belief that they recognized his rights.

We conclude that the evidence is clear and positive that defendants met the requirements for adverse possession of the disputed strip.

Because defendants adversely possessed the entire disputed area, they committed no trespass and there is no basis for any relief against them. It also follows that they are entitled to prevail on their quiet title claim.

Reversed and remanded for entry of judgment quieting title in defendants.