Christian L. RIEDDLE and Debra K. Rieddle, Appellant–Plaintiffs and Counter–Defendants Below,

v.

John H. BUCKNER and Mary Jane Buckner, Appellee–Defendants and Counterclaimants Below,

and

William P. Weyhrich and Karen S. Weyhrich, Appellee–Defendants Below.

No. 06A01–9309–CV–312.[1]

Court of Appeals of Indiana, First District.

Feb. 21, 1994.

1. This case was transferred to this office on December 30, 1993, by order of the Chief Judge.

Peter D. Cleveland, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, for appellant.

Michael A. Minglin, Hollingsworth, Meek, Miller & Pearson, Indianapolis, for appellee.

BAKER, Judge.

In this boundary line dispute between neighbors, we decide whether an adverse possessor exclusively possesses the real estate upon which the title owner had granted a permissive easement to a third party. We also decide whether the title owner's attorney's fees and expenses incurred in defending title are recoverable from the covenantor for breach of warranty of title. Appellant-plaintiffs Debra K. and Christian L. Rieddle challenge the judgment in favor of the appellee-defendants Mary Jane and John H. Buckner on their adverse possession counterclaim and the denial of certain damages against the defendants Karen S. and William P. Weyhrich.

## FACTS

The following facts are not disputed. In 1989, the Rieddles purchased a home from the Weyhriches platted as Lot 140 in the Woodlands subdivision in Carmel, Indiana. The Weyhriches conveyed Lot 140 by a general warranty deed. The Buckners owned Lot 141 along the eastern boundary of Lot 140. A fifteen-foot wide drainage and utility easement is located on the border between the two lots. The Rieddles subsequently learned that the fence which the Buckners' erected when they purchased Lot 141 in August 1977 encroached upon their lot.

The Rieddles filed a quiet title action to determine the boundary between Lots 140 and 141. The Buckners counterclaimed asserting adverse possession. The Rieddles also sought damages from the Weyhriches for breach of warranty of title.

In December 1991, the trial court awarded partial summary judgment in favor of the Buckners, determining that they acquired the real estate within their fence line by adverse possession. The breach of warranty claim against the Weyhriches and the quiet title action for the portion of land outside the Buckners' fence line along the Rieddles' lot remained for trial. On March 1, 1993, the trial court entered a default judgment in favor of the Rieddles on these two claims. At the hearing on damages, the Rieddles sought recovery from the Weyhriches for direct and consequential damages, and for litigation costs and attorney's fees incurred in defending against the Buckners' adverse possession claim. Finding that the approximately 268 square foot strip of land that the Buckners acquired by adverse possession was worth $500, the trial court held that the Rieddles suffered $500 damages for the Weyhriches' breach of warranty.

In sum, the final judgment awarded title of the real estate within the Buckners' fence line to the Buckners by adverse possession; quieted title of the balance of the land outside of the fence line along the Rieddles' lot to the Rieddles; and awarded the Rieddles $500 in damages against the Weyhriches.

## DISCUSSION AND DECISION

### I. Adverse Possession

The Rieddles challenge the determination of adverse possession in favor of the Buckners, claiming that three of the elements have not been established. To prevail on an adverse possession claim, the claimant must prove actual, visible, notorious, and exclusive possession of the real estate, under a claim of ownership hostile to the true owner for a continuous ten-year period. *Snowball Corp. v. Pope* (1991), Ind.App., 580 N.E.2d 733, 734. An additional element imposed by statute provides that the adverse claimant must have paid all taxes and assessments on the real estate during the period of adverse possession. *Id.;* IND.CODE 32–1–20–1 (Supp.1993). However, the statutory element does not apply here because there is a boundary dispute due to the erection of a fence. *See Kline v. Kramer* (1979), 179 Ind. App. 592, 386 N.E.2d 982, 989–90.

First, the Rieddles claim that the Buckners failed to prove exclusive possession of the real estate. The Rieddles contend that because utility companies have used the easement in the area bordering the lots, the Buckners' use and possession has not been exclusive. Possession is exclusive if only one entity claims possession adversely. *Snowball*, 580 N.E.2d at 735. Furthermore, the possession must be exclusive as against persons other than the legal owner. *Id.* (quotation omitted). Where the claimant occupies the land in common with third persons or the public generally, the possession is not exclusive. *Id.*

Nonetheless, the use of the easement does not affect the element of exclusive possession here. The utilities have an interest in the land, but only for the specific purposes granted in the easement. *See Brown v. Heidersbach* (1977), 172 Ind.App. 434, 360 N.E.2d 614 (easements are limited to the purpose for which they were created, and their enjoyment cannot be extended by implication). Additionally, while an easement is enjoyed under a deed, the utilities cannot claim the property through adverse possession so as to obtain fee simple ownership. *See id.; Naderman v. Smith* (1987), Ind.App., 512 N.E.2d

425. Thus, the Buckners' possession is exclusive notwithstanding the utility easement.

■ In further support of our decision, we note that in *Snowball*, the presence of licensees on the property did not sever the exclusive possession of the adverse claimant. *Snowball*, at 736. Similarly, we find that the use of a permissive easement does not negate exclusivity. *See generally Schoeller v. Kulawiak*, 118 Or.App. 524, 848 P.2d 619 (1993) (although disputed strip was subject to a roadway and utility easement, court held adverse possessor showed exclusivity by exhibiting kind of possession that would characterize an owner's use). The Buckners' actions exhibit an exclusive possession of the property within their fence. *See Herrell v. Casey* (1993), Ind.App., 609 N.E.2d 1145, 1148 (claimants exclusively possessed property they developed, maintained, built upon, and stored possessions).

■ Next, the Rieddles argue that the Buckners have not established hostility and notoriety to support adverse possession. Despite the presence of the Buckners' fence, the Rieddles assert that the restrictive covenants allow fences but provide that they must be removed if demanded for the use of easements. Thus, they contend the maintenance of a fence was not notorious or hostile.

■ Notorious possession is possession so conspicuous that it is generally known and talked of by the public in the vicinity. *Snowball*, 580 N.E.2d at 735 (quotations omitted). This element essentially alerts the owner that someone is asserting dominion over the owner's land. *Id.* Possession is hostile so long as the claimant does not disavow his right to possess the property or acknowledge that it is subservient to the title of the true owner. *See Kline*, 179 Ind.App. at 598–99, 386 N.E.2d at 988.

The Rieddles find it difficult to understand how the presence of the Buckners' fence and landscaping should have alarmed them that the Buckners claimed ownership of that strip of land. Indiana courts have repeatedly held that actions, such as the Buckners, should alert any reasonable title owner that his property is being adversely claimed. *See generally Echterling v. Kalvaitis* (1955), 235

Ind. 141, 126 N.E.2d 573; *Herrell*, 609 N.E.2d at 1148; *Kline*, 179 Ind.App. at 598–99, 386 N.E.2d at 988. Although the restrictive covenants permitted lot owners to build fences, the covenants do not permit a person to erect a fence upon another lot owners' land. The Rieddles' reliance upon the covenants fails. The Buckners' possession was notorious and hostile.

We conclude that the trial court properly granted summary judgment in favor of the Buckners on their adverse possession claim.

## II. Damages

The Rieddles also challenge the trial court's denial of consequential damages, litigation costs, and attorney's fees against the Weyhriches. The Rieddles claim that their damages included the value of the land awarded to the Buckners, losses due to their inability to refinance their home because of the pending litigation, litigation costs, and attorney's fees and expenses to defend against the Buckners' counterclaim. The trial court awarded damages only for the value of the land the Rieddles lost by adverse possession. The Rieddles do not contest the $500 award, but argue that they were also entitled to the other requested damages.

■ The Weyhriches have not filed an appellate brief; therefore, we review the Rieddles' argument under a prima facie standard. We may reverse the trial court's decision if the Rieddles make a prima facie showing of reversible error. *See Dusenberry v. Dusenberry*, 625 N.E.2d 458, 459 (Ind.App.1993). Prima facie error is that which appears on the face of the argument. *Id.*

■ Specifically, the Rieddles seek consequential damages resulting from their inability to refinance their mortgage since they could not show free and clear title due to the boundary line dispute. They expended $2,350 on their application and survey fees. They also maintain that they could not take advantage of a one-time refinancing discount worth $1,910 available through Rieddle's employer and that they incur interest at a higher rate.

A breaching party is liable for damages which are the direct, probable, and proximate result of its breach. *Indiana Insurance Co. v. Plummer Power Mower & Tool Rental, Inc.* (1992), Ind.App., 590 N.E.2d 1085, 1092. The measure of damages for breach of contract is limited by what is reasonably foreseeable at the time the contract was made. *Id.* The trial court's rejection of the Rieddles' argument regarding the damages related to refinancing was reasonable. The likelihood of refinancing was not reasonably foreseeable when the Weyhriches sold the lot to the Rieddles. We also note that the Rieddles could have refinanced their lot excluding the contested portion. The trial court correctly denied any damages based upon refinancing.

Because the Buckners were successful on their adverse possession claim, it follows that the Weyhriches breached their warranty of title to the Rieddles. The transferor by means of a warranty deed guarantees that the real estate is free from all encumbrances and that he will warrant and defend the title to the same against all lawful claims. *McClaskey v. Bumb & Mueller Farms, Inc.* (1989), Ind.App., 547 N.E.2d 302, 304, *trans. denied; appeal after remand,* 583 N.E.2d 1228; *aff'd in part, rev'd in part,* 597 N.E.2d 308; IND.CODE 32–1–2–12 (1979). Because the Weyhriches refused to defend the Rieddles' title against the Buckners' adverse possession claim, the Rieddles argue that they are entitled to reimbursement of $16,225 in attorney's fees, $720 in legal expenses, and $182.68 in personal litigation expenses, to defend their title against the Buckners. The Rieddles rely upon *Rauscher v. Albert,* 145 Ill.App.3d 40, 99 Ill.Dec. 84, 495 N.E.2d 149 (1986).

In *Rauscher,* the Illinois court held the plaintiffs were entitled to expenses and attorney's fees incurred in an unsuccessful attempt to establish title against an adverse possessor. *Id.* 99 Ill.Dec. at 89, 495 N.E.2d at 154. The Illinois court awarded the expenses and attorney's fees in defending the title against the adverse possessor, but not the expenses and attorney's fees arising from the plaintiffs' action for breach of covenants in the warranty deed. *Id.* The sole Indiana case discussing the recovery of costs and expenses in defending title is *Worley v. Hineman* (1893), 6 Ind.App. 240, 33 N.E. 260. *Worley* held that necessary expenses for defending one's title may be recovered from the covenantor for breach of warranty of title if he had notice of the suit against the grantee. *Id.* at 255, 33 N.E. at 264. In light of *Worley,* we adopt the result in *Rauscher,* and hold that only the reasonable attorney's fees and expenses the grantee expended in defending title are recoverable from the covenantor for breach of warranty of title.

It is within the trial court's discretion to award attorney's fees, and we will not disturb its decision absent an abuse of that discretion. *Matter of Guardianship of Posey* (1988), Ind.App., 532 N.E.2d 9, 13. The factors in Ind. Professional Conduct Rule 1.5(a) may guide a trial court's determination of reasonable attorney's fees. *Community State Bank Royal Center v. O'Neill* (1990), Ind.App., 553 N.E.2d 174, 178. Those factors are:

1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2) the likelihood, if apparent to the client, that the acceptance of the particular client, will preclude other employment by the lawyer;

3) the fee customarily charged in the locality for similar legal services;

4) the amount involved and the results obtained;

5) the time limitations imposed by the client or by the circumstances;

6) the nature and length of the professional relationship with the client;

7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8) whether the fee is fixed or contingent.

Prof.Cond.R. 1.5(a).

Here, the Rieddles presented evidence of the amounts incurred in defending their title separate from those for litigating the breach of warranty claim. *See* Record at 415. However, they have not shown that the

$16,225 in attorney's fees or their other expenses were reasonable compared to the $500 strip of property in dispute. *See* Prof. Cond.R. 1.5(a)(4). Nonetheless, they are entitled to a reasonable amount of attorney's fees. The trial court did not abuse its discretion by denying the Rieddles $16,225 in attorney's fees and litigation costs but erred by refusing a reasonable amount. We remand for the trial court to award the Rieddles a reasonable amount of attorney's fees.

Judgment affirmed in part, reversed in part, and remanded.

ROBERTSON, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

The dissenting opinion by Judge Hoffman in *Kline v. Kramer* (1979), 3d Dist., 179 Ind.App. 592, 386 N.E.2d 982 at 990 accurately observes that *Echterling v. Kalvaitis* (1955) 235 Ind. 141, 126 N.E.2d 573, upon which the *Kline* majority relied, in fact rewrote I.C. 32–1–20–1.

The statutory provision in question was enacted in 1927 and notwithstanding *Echterling*, decided in 1955, the provision has retained its straightforward, unambiguous and unchanged phrasing. One might well assume that the failure to amend the statute to conform to *Echterling* was a conscious failure intended to convey the legislative message that "we meant what we said."

A common legal premise is that the legislature is presumed to be aware of judicial decisions and unless the legislature changes the common law through express declarations, no such change is deemed intended. *State Farm Fire and Casualty Co. v. Structo Division, King Seeley Termos Co.* (1989) Ind., 540 N.E.2d 597. When the legislature does enact an amendment it may be inferred that the legislation in its earlier form did not contain the newly added provision. However, when a statute is ambiguous, the legislature might well amend in order to clarify that the provision was intended to be and was in fact a part of the statute as originally enacted. *Halley v. Board of School Trustees of Blackford County School Corp.* (1988) 4th Dist.Ind.App., 531 N.E.2d 1182; *Bailey v. Menzie* (1987) 3d Dist.Ind.App., 505 N.E.2d 126; *Indiana State Highway Commission v. Bates & Rogers Construction Inc.* (1983) 1st Dist.Ind.App., 448 N.E.2d 321. Conversely, it would seem that the fact that the legislature is charged with knowledge of a judicial decision which is contrary to legislative intendment does not compel or even warrant a statutory amendment to clarify what was clear in the first place.

It is entirely possible that the legislative language used in I.C. 32–1–20–1 was intended to make acquisition of title by adverse possession more difficult and to favor the title of the record owner rather than, as opined in *Echterling*, to be a mere supplement to the statute of limitations.

Although the statute as written may not, in the estimation of some, be good public policy, the enunciation of such policy is within the clear prerogative of the legislature. I know of no jurisprudential requirement or even existence of discretion to test legislation by its wisdom or lack thereof. "To the contrary, it is the duty of the courts to interpret a statute as they find it, without reference to whether its provisions are wise or unwise, necessary or unnecessary, appropriate or inappropriate, or well or ill conceived." 73 Am.Jur.2d, *Statutes* § 267 (1974).

As stated in *In the Matter of Grissom* (1992) Ind., 587 N.E.2d 114, 116:

> "Courts do not interpret statutes which are clear and unambiguous on their face. [Citation omitted] A statute which is clear and unambiguous must be given its apparent or obvious meaning".

More to the point, perhaps, is *Office of Utility Consumer Counselor v. Public Service Company of Indiana, Inc.* (1993) Ind., 608 N.E.2d 1362; 1363–1364, wherein the Court stated:

> "[W]e are not free to construe a statute which is unambiguous, and our ability to effect perceived legislative purposes is necessarily limited to the language of the statute."

Nevertheless, the *Echterling* decision is directly on point with respect to the statute

in question. Unless and until overruled by our Supreme Court, *Echterling* is binding upon us.

A more satisfactory basis for my concurrence, however, lies in the fact that the Rieddles do not base their appellate position, even in part, upon the Buckners' failure to comply with the tax-paying requirement of I.C. 32–1–20–1. Any such failure, therefore is not cause to reverse the judgment of the trial court. For this reason, I concur in the result which affirms the summary judgment in favor of the Buckners.[2] I fully concur in Part II of the opinion as to damages.

---

2. In doing so, I am unable to agree with the majority's statement that: "Possession is hostile so long as the claimant does not disavow his right to possess the property or acknowledge that it is subservient to the title of the true owner."

Op at 863. Certainly, if a claimant does disavow or acknowledge subservience of his claim, he cannot establish the requisite hostility of possession. However, the absence of those two factors does not in and of itself establish such hostility.