[Cite as *Koprivec v. Rails-to-Trails*, 2016-Ohio-1141.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

DON KOPRIVEC, et al.

    Appellants

    v.

RAILS-TO-TRAILS OF WAYNE
COUNTY

    Appellee

C.A. No.    15AP0006

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    11-CV-0083

DECISION AND JOURNAL ENTRY

Dated: March 21, 2016

---

SCHAFER, Judge.

{¶1}    Plaintiffs-Appellants, Don and Carolyn Koprivec, Brian and Laura Bilinovich, and Joseph and Michelle Koontz (collectively, "Appellants"), appeal the judgment of the Wayne County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee, Rails-to-Trails of Wayne County and denying Appellants' motions for summary judgment. For the reasons that follow, we affirm in part, reverse in part, and remand this matter for further proceedings.

I.

{¶2}    This is the second time that this matter has come before this Court on appeal. In the previous appeal, this Court outlined the following factual background:

> This suit centers on a dispute over the nature and scope of the property rights associated with a former railroad corridor that runs through Marshallville, Ohio. The railroad corridor abuts or divides certain parcels of real property owned by [Appellants]. The Koprivecs, who purchased their property in December 1981, own approximately 41 acres directly to the south of the railroad corridor. The

Bilinovichs, who purchased their property in May 1996, own approximately 129 acres to the north and south of the railroad corridor, as it horizontally severs their property near the south border. The Koontzes, who purchased their property in August 1998, own approximately 64 acres directly to the north of the railroad corridor. In October 2009, Rails-to-Trails purchased the railroad corridor from Pennsylvania Lines, LLC, Norfolk Southern Railway Company Corporation, the successor by merger of Consolidated Rail Corporation. Rails-to-Trails is an Ohio non-profit corporation [that] purchased the railroad corridor for the purpose of converting it into a multi-purpose trail for public use.

In February 2011, [Appellants] filed a declaratory judgment action and action to quiet title against Rails-to-Trails on the basis of adverse possession. [Appellants] sought a declaration that they had adversely possessed the portions of the railroad corridor abutting or dividing their respective properties and a judgment quieting title in each of their favors. They asked the court to issue a judgment to be recorded in the deed records, establishing them as holder of all rights, title, and interest in the aforementioned properties and respective portions of the railroad corridor, subject to any valid utility easements.

Rails-to-Trails answered [Appellants]' complaint and filed three counterclaims against them. Specifically, Rails-to-Trails filed claims for trespass, for declaratory judgment, and to quiet title. Rails-to-Trails asked the court to quiet title to the railroad corridor in its favor and [to] issue a judgment to be recorded in the deed records, declaring it "the sole and exclusive owner and possessor of the [railroad corridor]" such that "no other person or entity, including [Appellants] possesses any interest, ownership, or right" with respect to the property. It also sought monetary damages with regard to its claims for trespass.

*Koprivec v. Rails-to-Trails of Wayne Cty.*, 9th Dist. Wayne No. 13CA0004, 2014-Ohio-2230, ¶ 2-4 ("*Koprivec I*").

{¶3} The Koprivecs filed a motion for summary judgment in their favor on all of their claims as well as on Rails-to-Trails' counterclaims. The Bilinovichs and Koontzes, meanwhile, filed motions for summary judgment only as to Rails-to-Trails' counterclaims. Rails-to-Trails responded with its own motion for summary judgment on all of Appellants' claims and on its counterclaims to quiet title and for declaratory judgment. After the parties filed a significant amount of evidentiary materials, including deposition transcripts, affidavits, and supporting exhibits, the trial court granted Rails-to-Trails' motion for summary judgment and denied Appellants' motions for summary judgment.

{¶4} Appellants appealed to this Court, but we dismissed the appeal for lack of a final, appealable order "[be]cause the [trial] court's entry fail[ed] to set forth any declarations and does not expressly declare the parties' respective rights and obligations[.]" *Koprivec I* at ¶ 13. After the trial court proceedings resumed, Appellants filed a motion to reconsider. The trial court denied that motion and issued a new judgment again granting Rails-to-Trails' motion for summary judgment and denying Appellants' motions.[1] The court's entry states as follows regarding the parties' rights: "Rails-to-Trails is declared to be the sole and exclusive owner of the land in dispute, only subject to any recorded licenses or easements of record. [Appellants] do not have any rights to the property in dispute." Appellants filed this timely appeal, presenting five assignments of error for our review.

II.

### Assignment of Error I

**The trial court erred in granting summary judgment to Rails on the Koprivecs' claims.**

### Assignment of Error III

**The trial court erred in granting summary judgment to Rails on its counterclaims for declaratory relief and to quiet title as to all Appellants.**

### Assignment of Error V

**The trial court erred in granting summary judgment to Rails as to the claims of the Bilinovichs and of the Koontzes.**

{¶5} Since Appellants' first, third, and fifth assignments of error implicate similar issues, we elect to address them together. In their first assignment of error, Appellants argue that

---

[1] The trial court has not issued a judgment regarding Rails-to-Trails' trespass claim, which remains pending. Nevertheless, the trial court's judgment entry includes Civ.R. 54(B) language.

the trial court erred by granting summary judgment to Rails-to-Trails on the Koprivecs' claims. Similarly, in their fifth assignment of error, they contend that the trial court erred by granting summary judgment to Rails-to-Trials on the Bilinovichs' and the Koontzes' adverse possession claims. And, they assert that since there are genuine issues of material fact regarding their adverse possession claims, the trial court could not grant summary judgment to Rails-to-Trails on their counterclaims for a declaratory judgment and to quiet title. We agree on all three points.

## A.  Summary Judgment Standard

{¶6}    We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is only appropriate where (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. Civ.R. 56(C). Before making such a contrary finding, however, a court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶7}    Summary judgment consists of a burden-shifting framework. To prevail on a motion for summary judgment, the movant must first be able to point to evidentiary materials that demonstrate there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). In satisfying this initial burden, the movant need not offer affirmative evidence, but it must identify those portions of the record that support its argument. *Id*. Once the movant overcomes the initial burden, the non-moving party is precluded from merely resting upon the allegations contained in the pleadings to establish a genuine issue of material fact. Civ.R. 56(E). Instead, it has the

reciprocal burden of responding and setting forth specific facts that demonstrate the existence of a "genuine triable issue." *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

## B. The Trial Court's Reasoning

{¶8} The trial court properly outlined the elements of adverse possession in its entry granting Rails-to-Trails' motion for summary judgment: "to acquire title by adverse possession, a party must prove by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace v. Koch*, 81 Ohio St.3d 577, 580-581 (1998). It also appropriately noted that adverse possession is "disfavored" because "[a] successful adverse possession action results in a legal titleholder forfeiting ownership to an adverse holder without compensation." *Id*. at 580.

{¶9} As to the parties' respective burdens, the trial court stated that Rails-to-Trails "must prove there is no genuine issue of material fact that [Appellants] could prove with clear and convincing evidence to give them adverse possession of the land." It proceeded to determine that no such genuine issue of material fact existed since Appellants could not prove the exclusivity element of adverse possession. In support of this determination, the trial court found that the following activities on the railroad corridor defeated Appellants' claim of exclusive use:

(1) The existence of license agreements between Rails-to-Trails' predecessor-in-interest and Sprint and AT&T to install and maintain underground fiber optic cables throughout the railroad corridor;

(2) AT&T's and Sprint's activities on the railroad corridor to maintain the cables, including a 2007 right-of-way brush clearing; and

(3) The inspection of the railroad corridor by Solomon Jackson, an employee of Rails-to-Trails' predecessor-in-interest.

According to the trial court, this "use of the land [by Rails-to-Trails' predecessor-in-interest], and permitted use by a third party, clearly interrupts any exclusive use of the land by

[Appellants]." With these principles in mind, we now turn to the parties' arguments regarding Appellants' adverse possession claims.

### C. The Activities of the Utility Companies

{¶10} As to the first and second items relied upon by the trial court, it is undisputed that there are underground fiber optic cables on the entire railroad corridor abutting Appellants' properties. The record also establishes that Rails-to-Trails' predecessor-in-interest entered into license agreements allowing Sprint and AT&T to install and maintain those cables throughout the railroad corridor. While there is a dispute as to whether maintenance activities occurred on the portions of the corridor next to the Koprivecs' and Koontzes' properties, it is undisputed that on one occasion, utility company employees entered the portion of the corridor abutting the Bilinovichs' property to perform maintenance activities relating to the underground cables there. There is also no dispute that utility company employees came to that same section on two other occasions at Mr. Bilinovich's request to mark the cable lines.

{¶11} The parties dispute the import of these facts. Appellants argue that the existence of the underground utility lines and the actions of the utilities in maintaining them are insufficient to show as a matter of law that their use of the corridor was non-exclusive. Rails-to-Trails counters that the existence of the license agreements between their predecessor-in-interest and Sprint and AT&T, as well as the evidence indicating that utility company employees operated under them to enter the disputed corridor, show that Appellants did not exclusively use the corridor. We agree with Appellants' argument.

{¶12} For an adverse holder's use to be considered exclusive, "'use of the property does not have to be exclusive of all individuals.'" *Franklin v. Massillon Homes II, L.L.C.*, 184 Ohio App.3d 455, 2009-Ohio-5487, ¶ 27 (5th Dist.), quoting *Kaufman v. Geisken Ents., Ltd.*, 3d Dist.

Putnam No. 12-02-04, 2003-Ohio-1027, ¶ 39. Rather, the adverse holder's possession of the disputed property must only be exclusive of two types of people or entities: (1) "'the true owner entering onto the land and asserting his right to possession'"; and (2) "'third persons entering onto the land under their own claim of title, or claiming to have permission to be on the premises from the true title holder.'" *Id.*, quoting *Kaufman* at ¶ 39. Rails-to-Trails asks that we determine that the utility company employees who entered the railroad corridor pursuant to the license agreements fit into the second category. But, after reviewing the relevant case law, we do not believe that this category encompasses such employees.

{¶13} Preliminarily, we note that Rails-to-Trails has failed to cite any on-point case law that supports its proposition on this issue. *See* App.R. 16(A)(7), (B). Conversely, Appellants rely on *Cronin v. Standish*, 6th Dist. Sandusky No. S-05-023, 2006-Ohio-4293, to argue that a third party's installation of an underground utility on disputed property does not defeat an adverse possession claim. The dispute there was over a small portion of the adverse holders' concrete driveway, which was built on the true title holders' property. In support of their defense to the adverse possession claim, the true title holders relied upon "their execution of an easement for the installation of a gas line through the disputed property[.]" *Id.* at ¶ 22. After the true title holders granted the easement, the third party removed the adverse holders' driveway, installed the gas line, and then rebuilt the driveway. The Court of Appeals rejected this contention since "[n]either the execution of the easement nor the construction of a gas line across the driveway 'interrupted' [the adverse holders]' use of the property so as to invalidate their adverse possession claim." *Id.* Based on this conclusion, the Court of Appeals affirmed the trial court's award of summary judgment to the adverse holders on their adverse possession claim.

{¶14} Like the adverse holders in *Cronin*, Appellants have brought adverse possession claims. Meanwhile, Rails-to-Trails, like the true title holder in *Cronin*, has defended on the basis that an agreement executed by the true title holder allowing third parties to enter the land and construct an underground utility line defeated those claims. As a result, *Cronin* implicates similar facts as this matter and offers strong guidance here. In finding such guidance, we reject Rails-to-Trails' argument that *Cronin* is inapposite because it did not solely implicate the exclusivity prong of adverse possession. This argument fails to account for the court's statement that it "carefully scrutinized the record * * * for facts and evidence in support of each element required to establish title by adverse possession" and determined that the adverse holders "established all requisite elements in support of their claim to title by adverse possession." *Id*. at ¶ 18, 23.

{¶15} Following *Cronin*'s guidance, we conclude that the license agreements between Rails-to-Trails' predecessor-in-interest and AT&T and Sprint, as well as the activities of the utility companies pursuant to those agreements, are insufficient to defeat the exclusivity prong of Appellants' adverse possession claims as a matter of law. This conclusion is consistent with case law from other jurisdictions that applies their similar concepts of adverse possession. *See Rieddle v. Buckner*, 629 N.E.2d 860, 862-863 (Ind.App.1994) ("Nonetheless, the use of the easement does not affect the elements of adverse possession here. The utilities have an interest in the land, but only for the specific purposes granted in the easement. * * * Thus, [the claimants]' possession is exclusive notwithstanding the utility easement."); *Boyle v. Burk*, 749 S.W.2d 264, 266 (Tex.App.1988) ("An individual may adversely possess property subject to utility easements."). Additionally, the agreements giving rise to the fiber optic cables' existence and maintenance are limited solely to AT&T's and Sprint's activities as it relates to those

underground lines. Due to the limited nature of AT&T's and Sprint's rights from the agreements, we see no reason to seize on the existence of those rights to determine that Appellants' adverse possession claims are defeated as a matter of law. *See Merrill Lynch Mtge. Lending, Inc. v. Wheeling & Lake Erie Ry. Co.*, 9th Dist. Summit No. 24943, 2010-Ohio-1827, ¶ 10 ("An easement is a property interest in the land of another that allows the owner of the easement 'a limited use of the land in which the interest exists.'"), quoting *Colburn v. Maynard*, 111 Ohio App.3d 246, 253 (4th Dist.1996); *Warren v. Brenner*, 89 Ohio App. 188, 195 (9th Dist.1950) ("A license passes no property or interest in real estate[.]").

### D. Mr. Jackson's Activities

{¶16} In regard to the third factor relied upon by the trial court, the activities of Mr. Jackson, we also determine that they do not defeat the exclusivity prong of Appellants' claims as a matter of law. The record does not indisputably reflect that Mr. Jackson entered the portions of the railroad corridor abutting either the Koprivecs' property or the Koontzes' property. Rather, Mr. Jackson's deposition testimony only indicates that he may have been on those portions of the corridor, which is disputed by both the Koprivecs and the Koontzes. Also, there is no indication that Mr. Jackson entered the sections of the corridor next to the Koprivecs' and Koontzes' property for the purpose of asserting the true title holder's ownership interest. As a result, Mr. Jackson's activities, or lack thereof, on these portions of the railroad corridor are insufficient to defeat the exclusivity prong of the Koprivecs' and Koontzes' adverse possession claims as a matter of law. *Compare Ormandy v. Dudzinski*, 9th Dist. Lorain No. 10CA009890, 2011-Ohio-5005, ¶ 22 (affirming trial court's award of summary judgment in favor of true title holder where the evidence established that the title holder's predecessor-in-interest "routinely used the land in question").

{¶17} As to Mr. Jackson's activities on the portion of the railroad corridor next to the Bilinovichs' property, it is undisputed that Mr. Jackson entered that portion in 2002 at Mr. Bilinovich's invitation to discuss a possible sale of the corridor. There is no indication in the record that on this occasion, Mr. Jackson acted as "'the true owner entering onto the land and asserting his right to possession.'" *Franklin*, 184 Ohio App.3d 455, 2009-Ohio-5487, at ¶ 27, quoting *Kaufman*, 2003-Ohio-1027, at ¶ 39. According to his deposition testimony, Mr. Jackson simply related during his interactions with Mr. Bilinovich that the railroad corridor was unique and that a possible deal could be negotiated regarding its transfer or lease to the Bilinovichs. We cannot determine that this entry of the land by Mr. Jackson, which was devoid of a manifested "intent to recover possession or exercise dominion over the property," was sufficient to defeat the exclusivity prong of the Bilinovichs' adverse possession claims as a matter of law. *Crown Credit Co., Ltd. v. Bushman*, 170 Ohio App.3d 807, 2007-Ohio-1230, ¶ 41 (3d Dist.). *Compare Montieth v. Twin Fall United Methodist Church, Inc.*, 68 Ohio App.2d 219, 225 (9th Dist.1980) (reversing judgment in favor of adverse holder based on determination that true title holders' conducting of survey with intent to grade disputed property was "[a]n entry upon the disputed land [that] evokes a positive interruption of the statutory period and an unequivocal manifestation of intent to reclaim the property").

{¶18} On appeal, Rails-to-Trails emphasizes that by negotiating a possible sale of the railroad corridor with its predecessor-in-interest, Mr. Bilinovich acceded to the superiority of its claim to the corridor and that the Bilinovichs' adverse possession claims are precluded. But, the Supreme Court of Ohio foreclosed the adoption of such a view in *McAllister v. Hartzell*, 60 Ohio St. 69 (1899). There, the plaintiff was the true title holder and he sought to eject the defendant from the disputed property, but she defended on the basis that she had title due to adverse

possession. The plaintiff responded with "evidence tending to show that the predecessor in title of [the] defendant had, within 21 years before the bringing of the action, and while in possession, admitted that the title was in another, and had offered to purchase the land of that other." *Id*. at 81. As a result, the plaintiff asked for an instruction that "[a]n offer to purchase, by the adverse claimant, during and within the period of twenty-one years before this suit was brought, the land claimed adversely in the suit, would rebut the presumption of title gained by twenty-one years' adverse possession." *Id*. at 82.

{¶19} The trial court declined to give the requested instruction and the Supreme Court affirmed the trial court's determination on this point. *Id*. at 96. In reaching this determination, the Court declared:

> Where [a party claims title by way of adverse possession], any subsequent act or declaration of the claimant, or his predecessor in title, which does not estop the claimant to plead the statute, nor suspend the right of the holder of title to prosecute an action to recover possession, will not be sufficient to arrest the running of the statute. Neither a mere offer to buy within 21 years, nor an acknowledgment by the claimant within that time that the title was in another, or that the claimant did not own the land, will have that effect.

*Id*. at paragraph one of the syllabus; *see also Manos v. Day Cleaners & Dyers, Inc.*, 91 Ohio App. 361, 368 (9th Dist.1952) (stating that the court "adopt[ed] * * * the aphorism of the Supreme Court of this state as expressed in *McAllister*"). *McAllister* remains good law. *See Ault v. Prairie Farmers Co-Operative Co.*, 6th Dist. Wood No. WD-81-21, 1981 WL 5788, * 3-4 (Sept. 25, 1981) (determining that adverse holder's offer to buy the property "is not fatal to a claim for adverse possession" on the basis of *McAllister*); *Fulton v. Rapp*, 98 N.E.2d 430, 434 (2d Dist.1950) (applying *McAllister* and determining that the adverse holder's two offers to buy disputed property "did not change the character of the use of the land[,] * * * [n]or did the offer to buy divest [the adverse holder] of his rights"). As a result, we must reject Rails-to-Trails'

argument that Mr. Bilinovich's offer to purchase the railroad corridor precludes the Bilinovichs' assertion of an adverse possession claim.

{¶20} Moreover, it is unclear in the record whether Mr. Jackson was even on the portion of the railroad corridor abutting the Bilinovichs' properties with the authority of the corridor's true title owner. Mr. Jackson's deposition testimony indicates that Rails-to-Trails' predecessor-in-interest was undergoing a complex reorganization at the time of the negotiations. Due to the ongoing reorganization, Mr. Jackson said he could only offer a lease of the railroad corridor to Mr. Bilinovich since it was unclear exactly which entity owned it.

### E. Import of Judith Wiley's Activities on the Railroad Corridor

{¶21} Rails-to-Trails also contends that the trial court's award of summary judgment on the Bilinovichs' and the Koontzes' claims was appropriate because there is no genuine issue of material fact that they failed to possess the railroad corridor portions abutting their properties for the requisite 21 years. Since the Bilinovichs bought their property in 1996 and the Koontzes bought theirs in 1998, they both rely on the activities of their predecessor-in-title, Judith Wiley, to show that they satisfied the requisite period. "A[n adverse holder] does not have to use the property himself for the full twenty-one years. Under certain circumstances[, the adverse holder] may add on, or 'tack,' the number of years the land was adversely used by a predecessor in title." *Rising v. Litchfield Bd. of Twp. Trustees*, 9th Dist. Medina No. 11CA0079-M, 2012-Ohio-2239, ¶ 7. Rails-to-Trails argues that the Bilinovichs and the Koontzes are unable to tack their possession of the relevant portions of the railroad corridor on top of Ms. Wiley's possession because she averred in her affidavit that she only used a driveway on the corridor and did nothing else on it.

{¶22} The trial court did not address this contention and it did not rely on evidence relating to Ms. Wiley's activities on the railroad corridor when deciding to grant summary judgment. After reviewing the record, we conclude that it was proper for the trial court to avoid relying on this evidence since the record regarding Ms. Wiley's activities is contradictory and does not reveal the lack of a genuine issue of material fact. Some of Ms. Wiley's neighbors, her real estate agent, as well as several of Appellants executed affidavits in which they attested that Ms. Wiley was vigilant about ejecting trespassers on the railroad corridor and that she used the corridor for a variety of purposes. This evidence directly contradicts Ms. Wiley's averments in her affidavit and as a result, we reject Rails-to-Trails' argument that there is no genuine issue of material fact regarding her activities on the corridor and that the Bilinovichs' and Koontzes' are unable as a matter of law to tack onto her use of the corridor. *See id.* at ¶ 8 ("If * * *, [the adverse holder] can establish that his [predecessor-in-title's] use of the property was similar, continuous, open, notorious, and adverse, he may tack the number of years [the predecessor-in-title] used the property to reach the required twenty-one years.").

{¶23} Based on the evidence in the record, we cannot determine that Rails-to-Trails is entitled to summary judgment on Appellants' claims. As a result, we conclude that the trial court erred in granting summary judgment to Rails-to-Trails on all of Appellants' claims.

### F. Rails-to-Trails Counterclaims

{¶24} Since Rails-to-Trails has failed to establish that it is entitled to judgment as a matter of law on Appellants' adverse possession claims, it is also unable to establish that it is entitled to summary judgment on its counterclaims to quiet title and for declaratory judgment. *See Lyman v. Ferrari*, 66 Ohio App.2d 72, 73 (1st Dist.1979) (determining that summary judgment on quiet title claim was properly denied when genuine issues of material fact existed in

relation to adverse possession claim). Consequently, the trial court erred in granting Rails-to-Trails' motion for summary judgment on its counterclaims. In reaching this determination, we need not address Appellants' other arguments for the reversal of the trial court's award of summary judgment to Rails-to-Trails on its counterclaims.

{¶25} In sum, the trial court erred by granting summary judgment to Rails-to-Trails on Appellants' adverse possession claims. It also erred by granting summary judgment to Rails-to-Trails on its counterclaims for declaratory relief and to quiet title. Accordingly, we sustain Appellants' first, third, and fifth assignments of error.

## Assignment of Error II

**The trial court erred in not granting summary judgment to the Koprivecs on their claims.**

{¶26} In their second assignment of error, Appellants argue that the trial court erred by denying the Koprivecs' motion for summary judgment on their claims. We disagree.

{¶27} In order to obtain summary judgment in this matter, the Koprivecs have to establish that there was no genuine issue of material fact as to any of the elements for adverse possession and that they, as the adverse holders, are entitled to judgment as a matter of law. *See Cronin*, 2006-Ohio-4293, at ¶ 23. The trial court found that there was a genuine issue of material fact as to whether the Koprivecs possessed the portion of the railroad corridor next to their property for the requisite 21 years. After reviewing the record, we agree with the trial court's determination.

{¶28} Appellants argue that the proper start for the requisite period is 1988 on the basis of an affidavit executed by an individual who lived near the railroad corridor at that time. He attested that the tracks were removed before the winter of 1987 and he attached several newspaper articles to the affidavit that would seem to support his recollection. Rails-to-Trails

counters that the proper start date is in 1989 on the basis of Ms. Wiley's affidavit as well as the affidavit of a contractor who installed the fiber optic cables underneath the railroad corridor. Ms. Wiley attested that the railroad tracks and wooden ties were not fully removed from the corridor until 1989. This is consistent with the contractor's averment that when he installed the cables in 1987, the railroad tracks and ties were still present.

{¶29} We cannot say that the trial court erred in determining that the record reveals a genuine issue of material fact regarding the start date for the Koprivecs' possession of the railroad corridor. *See King*, 11th Dist. Ashtabula No. 2005-A-0031, 2006-Ohio-4823, ¶ 68 (reversing trial court's award of summary judgment on adverse possession claim since the evidence "in the record at least created a genuine issue of material fact to be tried"). The conflicting evidence regarding the removal of the railroad tracks and wooden ties prevents an undisputed determination of the proper start date, which prevents an undisputed determination that the Koprivecs possessed the land for the requisite period of 21 years. As a result, we conclude that the trial court properly denied the Koprivecs' motion for summary judgment on their adverse possession claims. *See Hofka v. Hanson*, 11th Dist. Ashtabula Nos. 2012-A-0007, 2012-A-0008, 2013-Ohio-1285, ¶ 28 (finding genuine issue of material regarding adverse possession claim where start date for 21-year period may have been either 1979 or 2002).

{¶30} Accordingly, we overrule Appellants' second assignment of error.

### Assignment of Error IV

**The trial court erred in not granting summary judgment to all Appellants as to all of Rails' counterclaims.**

{¶31} In their fourth assignment of error, Appellants contend that the trial court erred by denying their motion for summary judgment on Rails-to-Trails' counterclaims. We disagree.

### A. The Koprivecs

{¶32} Appellants argue that the Koprivecs are entitled to summary judgment on Rails-to-Trails' counterclaims because there are no genuine issues of material fact regarding their adverse possession claims. However, as discussed in our resolution of the second assignment of error, the Koprivecs are not entitled to summary judgment on their claims. Accordingly, they are likewise not entitled to summary judgment on Rails-to-Trails' counterclaims.

### B. The Bilinovichs and the Koontzes

{¶33} Appellants' asserted basis for the Bilinovichs' and Koontzes' entitlement to summary judgment flows from the 1882 deed that originally conveyed the portions of the railroad corridor abutting their properties to Akron Branch of the Cleveland and Pittsburgh Rail Road Company, one of Rails-to-Trails' predecessors in interest. The 1882 deed states relevantly as follows:

> I [the grantor] * * * do freely grant bargain sell and convey unto said Akron Branch of the Cleveland and Pittsburgh Rail Road Company and to its assigns forever the [property including portions of the railroad corridor abutting the Bilinovichs' and Koontzes' property].
>
> * * *
>
> To have and to hold said premises unto the said Akron Branch of the Cleveland and Pittsburgh Rail Road Company and to its assigns forever for the purpose of constructing and using thereon a Rail Road and other works connected therewith under and by virtue of the several acts of the Legislature of the State of Ohio incorporating and regulating said Akron Branch Rail Road Company.

{¶34} Appellants argue that this deed created a fee simple determinable which allowed the grantor's successors-in-interest, including the Bilinovichs and Koontzes, to retain a possibility of reverter in the portions of the railroad corridor abutting their properties. And, according to Appellants, once the corridor was sold to Rails-to-Trails for the purpose of constructing a non-motorized recreational trail, the Bilinovichs' and Koontzes' possibilities of

reverter were triggered and they obtained title to the portions of the corridor abutting their properties. However, after reviewing the 1882 deed and applying well-settled Ohio law, we disagree with Appellants' position.

{¶35} "The construction of written instruments, including deeds, is a matter of law [that we review] de novo." *Karam v. High Hampton Dev. Inc.*, 9th Dist. Summit Nos. 21265, 21269, 2003-Ohio-3310, ¶ 20 citing *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313 (1996); *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. "In arriving at the meaning of any part of the deed, the instrument must be read in its entirety in order to give effect to the intention of the parties." *Bath Twp. v. Raymond C. Firestone Co.*, 140 Ohio App.3d 252, 256 (9th Dist.2000). Accordingly, to determine "'[w]hether a conveyance by deed amounts to an indefeasible fee or a qualified fee [such as a fee simple determinable],'" we must consider "'the intention of the grantor taken from the four corners of the conveying instrument.'" *Walker v. Lucas Cty. Bd. of Commrs.*, 73 Ohio App.3d 617, 622 (6th Dist.1991), quoting *Waldock v. Unknown Heirs*, 6th Dist. Erie No. E-89-53, 1991 WL 197317 (June 7, 1991).

{¶36} It is a longstanding principle of Ohio law that absent a provision for forfeiture or reversion in the deed, courts must construe the deed as conveying a fee simple absolute, not a fee simple determinable. *E.g. Miller v. Village of Brooksville*, 152 Ohio St. 217 (1949), syllabus ("When a conveyance of land owned in fee simple is made to and accepted by a municipality in perpetuity for use as a park, and there is no provision for forfeiture or reversion, the entire estate of the grantor is divested, and the title of municipality thereto is not a determinable fee but a fee simple."); *In re Petition of Copps Chapel M.E. Church*, 120 Ohio St. 309 (1929), paragraph one of the syllabus ("To create a condition in a grant of the land to a municipal corporation, apt and

appropriate words must be used [such as] * * * provision for an automatic termination of the estate in the case of a determinable fee."). *Copps Chapel* is particularly illustrative of this concept. There, the deed conveying the disputed property stated as follows:

> [T]he grantor * * * absolutely give[s], remise[s], release[s] and forever quitclaim[s] unto [the grantees and their assigns] forever all such right and title as he * * * has or ought to have in [the property.]
>
> * * *
>
> To have and to hold the premises aforesaid unto the said grantees * * * but they and every one of them shall by these presents be excluded and forever barred so long as said lot is held and used for church purposes.

*Copps Chapel* at 218-219. After the conveyance, the grantees petitioned the trial court to authorize them to sell the property. The trial court gave the requested relief and the Supreme Court of Ohio affirmed that judgment based on the following reasoning:

> Where a quitclaim deed, for valuable consideration, conveys to trustees of an unincorporated church association certain real property, "To have and to hold * * * unto said grantees and their successors * * * so long as said lot is held and used for church purposes," without any provision for forfeiture or reversion, such statement is not a condition or limitation of the grant. Since the deed contains no provision for forfeiture or reversion, all of the estate of the grantor was conveyed to the grantee. Hence a church building affixed to the realty does not pass to the heirs of the grantors when such lot and building cease to be used for church purposes.

*Id*. at syllabus. *Copps Chapel* remains good law. *See Kauble v. Cooley*, 10th Dist. Franklin No. 86AP-822, 1988 WL 4673, *1 (Jan. 19, 1988) (noting that "[w]hile the decision in *Copps Chapel* has been frequently criticized by scholars, it is still the rule of law of Ohio").

{¶37} This Court's decision in *PCK Properties v. Cuyahoga Falls*, 112 Ohio App. 492 (9th Dist.1960), is consistent with *Copps Chapel* and offers further guidance in this matter. There, the deed stated "[the grantor] does hereby grant, bargain, sell and convey to * * * grantee, as long as used hereinafter set forth, [the disputed property.]" *Id*. at 493. The deed further

provided that "[the disputed property] is to be used by [grantee] for the purpose of creating and maintain a public park[.]" *Id.* The grantor's heirs sought a declaratory judgment that the interest in the disputed property reverted to them after the grantee did not construct a public park on the property as indicated in the deed. The trial court denied the heirs' requested relief and this Court affirmed on the following basis:

> It thus appears, under circumstances such as exist here, and in adhering to the principles of law pronounced by the Supreme Court of this state, a conveyance of land in fee simple, made by a donor to a municipal corporation, which contains in the granting clause of the deed (by specific reference to a subsequent clause) that such land is deeded to the municipal corporation "so long as" the land is "used * * * for the purpose of creating and maintaining a public park * * *," does not create a determinable fee * * * *without other language in the deed* providing for reversion or forfeiture * * *; and that the failure to [comply with the deed description of purpose] does not automatically terminate the estate upon such occurrence[.]

*Id.* at 497.

**{¶38}** Based on this precedent, we must determine that the 1882 deed divested the grantor of his entire estate and created a fee simple absolute. Like the deeds in *Copps Chapel* and *PCK Properties*, the 1882 deed does not contain a provision stating that upon the grantee's failure to use the corridor for railroad purposes, ownership of the corridor reverts to the grantor. The lack of this provision is critical and it precludes both the Bilinovichs and the Koontzes from claiming a possibility of reverter in the portions of the railroad corridor abutting their properties. *Compare Miller* at 223 ("One fatal difficulty with this theory is that * * * the deed from [the grantor to the grantee] contained no forfeiture or reversion clause[.]") *with Schwing v. McClure*, 120 Ohio St. 335, 340 (1929) (distinguishing *Copps Chapel* because the deed "contained a reverter clause, providing that 'if at any time the premises herein described shall cease to be used for school purposes, the same shall at once vest in said grantors, their heirs and assigns forever,' which completely differentiates the two cases upon the facts"). The statement in the 1882 deed

that the conveyance of land was for the purpose of a railroad should not be read as a qualification of the type of fee divested and instead should be viewed as merely describing the purpose of the acquisition. *See Little Miami v. Wisecup*, 13 Ohio App.3d 239, 241 (1st Dist.1984) ("The words of limitation concerning the use of the property only for the construction of a railroad appeared not in the granting clause, but in a separate clause that served, in our judgment, merely to describe the purpose of the acquisition.").

{¶39} Appellants attempt to overcome this deficiency by arguing that the deed incorporates the language of the 1835 legislative act passed by the Ohio General Assembly to incorporate the Akron Branch Rail Road Company, Rails-to-Trails' predecessor-in-interest and the original grantee of the 1882 deed. This act does contain language indicating that the Akron Branch Rail Road Company can only engage in railroad purposes and "no further." But, the incorporation of this language is immaterial since it is located in the deed's habendum clause and the deed does not contain any provision for a possibility of reverter. *See Copps Chapel* at 318-319 (rejecting argument that "mere covenant" in the habendum clause created possibility of reverter).

{¶40} In sum, the trial court properly denied Appellants' motions for summary judgment on Rails-to-Trails' counterclaims. Accordingly, we overrule Appellants' fourth assignment of error.

III.

{¶41} Appellants' first, third, and fifth assignments of error are sustained. Conversely, Appellants' second and fourth assignments of error are overruled. Thus, the judgment of the Wayne County Court of Common Pleas is affirmed in part and reversed in part. The following

portions of the judgment are affirmed:

    (1) The portion denying the Koprivecs' motion for summary judgment on their claims; and

    (2) The portion denying Appellants' motion for summary judgment on Rails-to-Trails counterclaims.

And, the following portions of the judgment are reversed:

    (1) The portion granting summary judgment to Rails-to-Trails on the Koprivecs' claims;

    (2) The portion granting summary judgment to Rails-to-Trails on the Bilinovichs' and Koontzes' claims; and

    (3) The portion granting summary judgment to Rails-to-Trails on their counterclaims for declaratory relief and to quiet title.

We remand this matter to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
JULIE A SCHAFER
FOR THE COURT

MOORE, J.
CONCURS IN JUDGMENT ONLY.

HENSAL, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶42} I agree with the majority's disposition of this case, but write separately to clarify why I do not believe that the activity of the utilities companies defeated the adverse holders' claims that they were in exclusive possession of the disputed land. As the majority has pointed out, if land is subject to an easement, "use of the easement does not affect the element of exclusive possession[.]" *Rieddle v. Buckner*, 629 N.E.2d 860, 862 (Ind.App.1994). The majority does not explain, however, why that rule should apply to the "license" agreements that AT&T and Sprint entered into with Conrail.

{¶43} "There are two types of licenses: revocable licenses which are mere privileges to do an act on the land of another and licenses coupled with [an] interest which are generally irrevocable." *Hampton Ridge Condominium Assn. v. Hampton Woods Condominium, Inc.*, 9th Dist. Summit No. 22036, 2005-Ohio-9, ¶ 6. If the parties to a license intend for it to be permanent, the license is said to be coupled with an interest. *Id*. In this case, the utility licenses

granted AT&T and Sprint the right to install and maintain fiber optic cables on Conrail's land for a period of 15 years, with an option for Conrail to renew the agreements for 2 additional fifteen-year periods. Although the agreements are not "permanent," they are at least irrevocable during the initial 15-years and any renewal periods. Accordingly, I believe the interest they created was closer to a license coupled with an interest than a revocable license. Ohio courts have recognized that "[l]icenses coupled with an interest can be, in effect, easements * * * because there is not merely permission to do the act, but a right to do the act." *Kamenar R.R. Salvage, Inc. v. Ohio Edison Co.*, 79 Ohio App.3d 685, 691 (3d. Dist.1992). Thus, I think it is appropriate to treat the licenses as easements for the purpose of deciding whether AT&T and Sprint's activities on Rails-to-Trails' land over the last few decades negated the Koprivecs', Bilinovichs', and Koontzs' exclusivity claims.

APPEARANCES:

JOHN K. KELLER, THOMAS H. FUSONIE, and DANIEL E. SHUEY, Attorneys at Law, for Appellants.

RALPH E. CASCARILLA and BONNIE S. FINLEY, Attorneys at Law, for Appellee.